HARMON L. PARMELEE *et al.*

*v.*

VINCENT C. PRICE *et al.*

*Opinion filed April 20, 1904.*

1. CORPORATIONS—*over-valuation of property taken in payment for stock is binding on corporation.* Fraudulent over-valuation of property turned over to a corporation by stockholders in payment of their subscriptions, while it renders the transaction voidable as to creditors and other stockholders prejudiced thereby, is binding upon the corporation, and as between the corporation and such stockholders the stock subscription is fully paid.

2. SAME—*stockholder is primarily liable for unpaid balance on stock.* Under section 8 of the Corporation act a stockholder is directly liable to creditors of the corporation for an unpaid balance on his stock, and the creditor may sue the corporation and garnish the stockholder at the same time without obtaining a judgment and having an execution returned *nulla bona.*

3. SAME—*when right of action accrues under section 8 of Corporation act.* The right of action by a creditor of a corporation against a stockholder to reach an unpaid balance on his subscription, under section 8 of the Corporation act, accrues when the debt against the corporation is due, and the Statute of Limitations begins at that time to run in favor of the stockholder.

4. SAME—*when right of action accrues under section 25 of Corporation act.* When a stock subscription is paid in fraudulently over-valued property, the right of action in favor of a creditor of the corporation against the stockholder accrues whenever the corporation

ceases doing business leaving debts unpaid, and he may enforce such right of action in equity, under section 25 of the Corporation act, without a judgment at law.

5. STATUTE OF LIMITATIONS—*right of action against stockholder is governed by five year statute.* The right of action by a creditor of a corporation against a stockholder, under the statute, to the extent of the unpaid portion of his stock, is a "civil action, not otherwise provided for," within the meaning of section 15 of the Limitation act, and is governed by the five year statute.

6. SAME—*effect where two methods for enforcing liability are provided.* Where two methods are provided by statute by which a creditor of a corporation may enforce the liability of a stockholder for his unpaid stock subscription, the Statute of Limitations begins to run as to both methods whenever a right accrues to the creditor under either method to proceed directly against the stockholder.

7. SAME—*electing to proceed under section 49 of Chancery act does not extend period of limitation.* Electing to proceed by an ordinary creditor's bill under section 49 of the Chancery act instead of by filing a bill under section 25 of the Corporation act against a stockholder to reach an unpaid stock subscription in a corporation which has ceased doing business leaving debts unpaid, does not extend the period of limitation which bars the right of action.

8. SAME—*what does not prevent application of Statute of Limitations.* That a creditor of a corporation did not know of the fraudulent over-valuation of property given in payment for stock, by which it was made to appear that such stock was fully paid, does not amount to such fraudulent concealment of the cause of action, within the meaning of section 22 of the Limitation act, as prevents the running of the statute.

9. TRIAL BY JURY—*what not a denial of right of trial by jury.* Permitting a creditor of a corporation which has ceased doing business leaving debts unpaid, to proceed against the stockholders for unpaid stock subscriptions without reducing his claim to a judgment at law is not a denial of the right of trial by jury, within the meaning of the constitution.

*Parmelee* v. *Price,* 105 Ill. App. 271, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

In May, 1890, the Interior Building Company was organized as a corporation under the laws of this State, with a capital stock of $125,000. The license to open

208—35

books for subscription to the capital stock was issued to Vincent C. Price, Henry F. Vehmeyer and C. August Ebert. Price subscribed for $48,000 of the capital stock, Vehmeyer for $32,000, and the remainder of the $125,000 was subscribed for by C. August Ebert, R. C. Price and G. K. Williams. At or about the time of the formation of this company a plant for the manufacture of sash, doors, blinds and woodwork pertaining to buildings was purchased from James B. Goodwin, as assignee of the estate of the C. J. L. Meyer & Sons Company, insolvent, for $25,000, that amount being furnished for the purchase of the plant by said stock subscribers according to the proportion and ratio of their subscriptions to said capital stock, and the plant was turned over to the Interior Building Company to apply on the stock subscriptions at the sum of $100,000. The subscribers to the capital stock also paid into the company $25,000 in cash in the proportion and ratio of their said subscriptions, and thereupon the entire capital stock of the company was issued to said subscribers in the amount subscribed for by them, respectively, as full-paid stock. No other money or thing of value was ever paid by said subscribers on account of their subscriptions. The plant was not, at the time of its purchase from Goodwin, nor has it been since that time, worth more than $25,000.

Between and including the 16th and 23d days of May, 1895, separate suits at law were commenced by the several appellants herein against the Interior Building Company, all of said suits being brought in the circuit court of Cook county except one, and that one being brought in the superior court of that county. Judgment was recovered in each of these cases, the dates of the judgments rendered ranging from March 9, 1896, to April 12, 1897, and in each instance an execution was issued, which was returned by the sheriff of Cook county with an endorsement that he had demanded of the Interior Building Company, by its president, Vincent C. Price, money or

property to satisfy the writ, and it having failed to satisfy the same, or any part thereof, and the sheriff not being able to find any property of the defendant within his county on which to levy the writ, he therefore returns the same no property found and no part satisfied.

On May 16, 1895, judgment by confession was entered in the circuit court of Cook county against the Interior Building Company in favor of the Lincoln National Bank of Chicago for $20,065.23 and costs. An execution was issued on this judgment and a levy made on all the property of the company. On May 17, 1895, two bills were filed against said company by certain creditors in the circuit court of Cook county, to which all its stockholders and stock subscribers were made defendants. These suits were afterwards consolidated, and on May 20, 1895, a receiver was appointed for the company, who collected all its assets, and after paying the expenses of the receivership applied the remainder of the assets to the bank's judgment in pursuance of the final decree entered in the consolidated causes, by consent of all the parties thereto, on October 31, 1899. No decree was entered in these cases dissolving the company and winding up its affairs, or finding any of the parties thereto liable on account of their subscriptions to the capital stock of the company. The bill was dismissed, by the consent decree, as to all allegations of such liability, and only questions arising with respect to the administration of the affairs of the company by the receiver were adjudicated in those cases. The appellants here were not parties to the consolidated causes.

The above facts are set out in a creditors' bill filed in the superior court of Cook county on May 25, 1901, by appellants against the Interior Building Company, Vincent C. Price and Henry F. Vehmeyer, to compel the two defendants last named to pay the judgments obtained by appellants against said company, on the ground that the Goodwin property had been fraudulently over-valued,

and charging that Price was indebted to said company in the sum of $28,800 on account of unpaid subscription to the capital stock, and Vehmeyer in the sum of $19,200 on the same account. Vehmeyer filed a general demurrer to the bill. Price also filed a demurrer, showing as causes therefor, first, that the cause of action was barred by the Statute of Limitations; second, that complainants are barred by the adjudication in the consolidated causes above referred to; third, that complainants have been guilty of *laches;* and fourth, the bill is defective in not making C. August Ebert, R. C. Price and G. K. Williams parties to the bill. The demurrers were sustained and the bill was dismissed for want of equity as to the defendants Price and Vehmeyer. The Appellate Court for the First District has affirmed the decree of the superior court, and appellants now appeal to this court.

The only question here presented is whether the cause of action above stated is barred by section 15 of chapter 83 of the Revised Statutes.

WILLIAM S. CORBIN, for appellants:

The right to enforce the liability of stockholders for unpaid stock by a creditor's bill, under section 49 of the Chancery act, does not accrue until the creditor's remedy against the corporation is exhausted by a judgment at law, and execution with a return of *nulla bona* thereon. *Merritt* v. *Reid,* 10 Daly, 311; *Taylor* v. *Bowker,* 111 U. S. 110; *Christensen* v. *Quintard,* 36 Hun, 334; *VanPelt* v. *Gardner,* 75 N. W. Rep. 874; *Durand & Co.* v. *Gray,* 129 Ill. 9; *Russell* v. *Bank,* 139 id. 538; *Stirlen* v. *Jewett,* 165 id. 410; *Clapp* v. *Peterson,* 104 id. 35; *Young* v. *Farwell,* 139 id. 332.

In enforcing a stockholder's liability, the creditor must have obtained a judgment against the corporation, with a return of *nulla bona,* before he may sue the stockholder. 23 Am. & Eng. Ency. of Law, 885.

A simple contract creditor cannot file a bill under section 25 of the Corporation act. A creditor's bill which

seeks to satisfy a legal demand out of property accessible only in equity cannot be maintained without a prior judgment at law.    *Miller* v. *Davidson*, 3 Gilm. 518; *Bigelow* v. *Andress*, 31 Ill. 322; *Shufeldt* v. *Boehm*, 96 id. 560; *McConnel* v. *Dickson*, 43 id. 99; *Dormueil* v. *Ward*, 108 id. 216; *Austin* v. *Bruner*, 169 id. 178.

If it were otherwise, the right of trial by jury upon the legal demand would be denied.    Const. 1870, art. 2, sec. 5; *Gore* v. *Kramer*, 117 Ill. 176; *Ladd* v. *Judson*, 174 id. 344; *Rolling Mills* v. *Ledwidge*, 162 id. 305; *Swan Land Co.* v. *Frank*, 148 U. S. 603; *Scott* v. *Neely*, 140 id. 106.

The only exception to the rule is where the claim has in itself some equitable element and is of such an equitable character that it can only be established in a court of equity, which is determined by the nature of the claim against the principal debtor, and not by the source out of which ultimate satisfaction may have to be obtained. *Miller* v. *Davidson*, 3 Gilm. 518; *Beach* v. *Bestor*, 45 Ill. 341; *Dewey* v. *Eckert*, 62 id. 218; *Dormueil* v. *Ward*, 108 id. 219; *Rolling Mills* v. *Ledwidge,* 162 id. 309; *Ladd* v. *Judson*, 174 id. 349; *Cotes* v. *Bennett*, 183 id. 87; *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144; *Scott* v. *Neely*, 140 U. S. 112.

Nor does the doctrine that the assets and capital stock of a corporation are a trust fund for the benefit of its creditors supply the "equitable element" or change the rule as stated.    *Swan Land Co.* v. *Frank*, 148 U. S. 603; *Hollins* v. *Iron Co.* 150 id. 371; *Gottlieb* v. *Miller*, 154 Ill. 52.

The right of trial by jury is not preserved, in chancery, by directing an issue or issues to be tried by a jury, as to so direct is discretionary with the court, and when it is done the verdict is merely advisory.    *Garrett* v. *Stevenson*, 3 Gilm. 278; Rev. Stat. chap. 22, sec. 40; *Sibert* v. *McAvoy*, 15 Ill. 106; *Milk* v. *Moore*, 39 id. 584; *Guild* v. *Hull*, 127 Ill. 523; *Keith* v. *Henkleman*, 173 id. 137; *Coal Co.* v. *Snowden*, 42 Pa. St. 488.

Where stockholders are individually liable to creditors for the debts of the corporation, a creditor's bill,

the office of which is to reach equitable assets of the debtor, will not lie, as there is an adequate remedy at law, (*Culver* v. *Bank*, 64 Ill. 528; *McCarthy* v. *Lavasche*, 89 id. 270; *Wincock* v. *Turpin*, 96 id. 135;) unless the jurisdiction of chancery attaches on the ground of preventing a multiplicity of suits or of securing a *pro rata* distribution of the fund, (*Eames* v. *Doris*, 102 Ill. 350; *Tunesma* v. *Schuttler*, 114 id. 156; *Queenan* v. *Palmer*, 117 id. 619;) or unless for some other reason (as in a proceeding to enforce the liability of directors and officers assenting to indebtedness in excess of the capital stock) a resort to chancery has been held necessary. *Woolverton* v. *Taylor*, 132 Ill. 197; *Low* v. *Buchanan*, 94 id. 76.

Under section 25 of the Corporation act the liability of stockholders for unpaid stock can be enforced only in case of the insufficiency of the assets of the corporation for the payment of its debts; and the collection and disposition of the corporate assets must necessarily precede the final determination of the liability of the stockholders. *Chicago Steel Works* v. *Steel Co.* 153 Ill. 9; *VanPelt* v. *Gardner*, 75 N. W. Rep. 874.

Under section 25 the bill must be filed on behalf of all creditors of the corporation, and all solvent stockholders within the jurisdiction of the court must be made parties, while under section 49 one creditor may file a bill against one or more stockholders. *Curran* v. *Bradner*, 27 Ill. App. 582; *Singer* v. *Hutchinson*, 183 Ill. 606; *Coleman* v. *Howe*, 154 id. 458.

MUSGRAVE, VROMAN & LEE, for appellee V. C. Price:

The Statute of Limitations is one of repose. Questions affecting its application should be considered with this main object in view. *Bell* v. *Morrison*, 1 Pet. 360; *Shepard* v. *Thompson*, 122 U. S. 231; *Pritchard* v. *Howell*, 1 Wis. 131; 1 Wood on Limitations, (2d ed.) 7.

Under section 25 of the Corporation act the right of action to enforce a stock liability accrues at once to

creditors, without judgment at law or the return of an execution, when the corporation ceases to do business leaving debts unpaid. *Wheeler* v. *Insurance Co.* 143 Ill. 197; *Palmer* v. *Woods,* 149 id. 146; *Paper Co.* v. *Robbins,* 151 id. 588; *Atwater* v. *Bank,* 152 id. 605; *Chicago Steel Works* v. *Steel Co.* 153 id. 9; *Exposition Co.* v. *Gasch,* 162 id. 402; *Siegel* v. *Anderson,* 181 id. 350; *Singer* v. *Hutchinson,* 183 id. 606; *Turner* v. *Alabama Co.* 25 Ill. App. 144; *Curran* v. *Bradner,* 27 id. 582; *Woolverton* v. *Taylor,* 43 id. 424; *Buda Foundry Co.* v. *Celebration Co.* 55 id. 381; *Northam* v. *Atherton,* 67 id. 230; *Bank* v. *Peoria Watch Co.* 77 id. 663.

This right of action against stockholders is not secondary,—*i. e.*, after the corporation assets have been exhausted,—but primary. *Hutchins* v. *Lampson,* 82 Fed. Rep. 960; *Long* v. *Bank,* 90 N. C. 405; *Pease* v. *Underwriters,* 1 Ill. App. 287; *Hospes* v. *Manufacturing Co.* 15 L. R. A. 470; *Jones* v. *Edson,* 62 Pac. Rep. 249; *Brigham* v. *Nathan,* 62 id. 319; *Swearingen* v. *Dairy Co.* 198 Pa. 471; *Carroll* v. *Green,* 92 U. S. 509; *Godfrey* v. *Terry,* 97 U. S. 171.

Even though a decree cannot be rendered against stockholders because of a stock liability until after the corporate assets have been exhausted, yet the right of action accrues immediately upon the corporation ceasing to do business leaving debts unpaid. *Woolverton* v. *Taylor,* 132 Ill. 197; *Baker* v. *Bank,* 9 Metc. 182; *Commonwealth* v. *Bank,* 3 Allen, 41; Thompson on Stockholders, secs. 295, 296; *Barrick* v. *Gifford,* 47 Ohio St. 180; 1 Wood on Limitations, (2d ed.) sec. 149; *Olsen* v. *Cook,* 57 Minn. 552; *Hilliner* v. *Hall,* 117 Fed. Rep. 220.

Where the statutes or the law of a State permit two different remedies against stockholders to enforce their stock liability, the Statute of Limitations begins to run against both from the time the cause of action first available accrues. *Conklin* v. *Furman,* 8 Abb. Pr. (N. S.) 16; 48 N. Y. 527; *Cottell* v. *Manlove,* 49 Pac. Rep. 519.

A judgment being unnecessary for the purpose of enforcing a stock liability, the fact that this action is based

upon a judgment and the return of an execution did not prolong the time within which the action might be brought. *Stiphen* v. *Ware,* 45 Cal. 110; *Bassett* v. *Hotel Co.* 47 Vt. 312; *Long* v. *Bank,* 90 N. C. 405; 1 Cook on Corp. sec. 225*f*; 2 Thompson on Corp. sec. 2012, *et seq.*

The Statute of Limitations begins to run against the liability of a stockholder to creditors of a corporation on his unpaid stock subscription from the time the corporation becomes insolvent and a receiver takes possession of all its property. *Swearingen* v. *Dairy Co.* 198 Pa. 68; *Barrick* v. *Gifford,* 47 Ohio St. 180; *Bronson* v. *Schneider,* 49 id. 438; *McDaniell* v. *Insurance Co.* 85 Ala. 401; *Hollingshead* v. *Woodward,* 107 N. Y. 96; Clark on Priv. Corp. 2631, 2633.

Mr. Justice Scott delivered the opinion of the court:

This is an ordinary creditor's bill, brought under section 49 of the Chancery act, by which it is sought to enforce the liability of Vincent C. Price and Henry F. Vehmeyer for unpaid subscriptions to stock in the Interior Building Company, a corporation, which is the principal defendant and against whom appellants had obtained judgments.

Section 25 of chapter 32 of Hurd's Revised Statutes of 1901 provides: "If any corporation or its authorized agents shall do, or refrain from doing any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record, for a payment of money, after demand made by the officer, to be returned 'no property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his *pro rata* share of such debts or liabilities to the extent of the unpaid portion of his stock,

after exhausting the assets of such corporation. And if any stockholder shall not have property enough to satisfy his portion of such debts or liabilities, then the amount shall be divided equally among all the remaining solvent stockholders. And courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor who shall have authority, by the name of the receiver of such corporation (giving the name), to sue in all courts and do all things necessary to closing up its affairs, as commanded by the decree of such court. Said receiver shall be, in all cases, a resident of the State of Illinois, and shall be required to enter into bonds, payable to the People of the State of Illinois, for the use of the parties interested, in such penalty and with such securities as the court may, in the decree or order, appointing the same, require. In all cases of suits for or against such receiver, or the corporation of which he may be receiver, writs may issue in favor of such receiver or corporation, or against him or it, from the county where the cause of action accrued to the sheriff of any county in this State for service."

The Interior Building Company, on May 20, 1895, being then insolvent, passed into the hands of a receiver, who then took possession of all its property and effects and afterwards administered them in the interests of its creditors. It never resumed business. The bill herein was filed May 25, 1901. We think its averments show that the corporation ceased doing business, leaving debts unpaid, more than five years prior to the time of the filing of this bill. At that time it was indebted to all of the appellants, and their debts were due and payable. After that, and within five years prior to the filing of this bill, the appellants recovered judgments at law against the corporation. Executions were issued thereon and returned "no property found," except in the case of one of the appellants, whose judgment was recovered more than five

years prior to the filing of the bill herein. The execution on that judgment, however, was issued and returned after the filing of this bill, and that appellant thereafter became a party complainant upon petition for that purpose, not having been ·a party to the bill as originally filed. The demurrer was sustained in the superior court, and the decree of that court was affirmed in the Appellate Court on the theory that the stockholder is entitled to the benefit of the five year Statute of Limitations; that a suit by a creditor to enforce the liability of a stockholder, under section 25, for an unpaid stock subscription must be brought within five years after the corporation shall "cease doing business, leaving debts unpaid," in the language of that section, and that immediately upon the corporation ceasing to do business, leaving debts unpaid, any creditor of the corporation whose debt is due has a right of action which then accrues against the stockholder, and can immediately begin a suit in equity to enforce payment of his debt, joining the corporation and the stockholders, under the provisions of that section, without first reducing the claim to a judgment at law against the corporation. Appellants argue that simple contract creditors cannot file a bill under section 25, *supra*, and that a right of action would not accrue to the creditor against the stockholder until a judgment had been obtained against the corporation and an execution returned *nulla bona.*

It appears from the bill that the stock of appellees was paid for partly in cash and partly in property, and that this property was fraudulently over-valued to such an extent that, in fact, only forty per cent of the subscription was paid. While this transaction was voidable as to creditors or other stockholders prejudiced thereby, it was binding upon the corporation. *Bouton* v. *Dement,* 123 Ill. 142.

Section 8 of chapter 32 of Hurd's Revised Statutes of 1901 provides: "Every assignment or transfer of stocks,

on which there remains any portion unpaid, shall be recorded in the office of the recorder of deeds of the county within which the principal office is located, and each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him, to be collected in the manner herein provided. No assignor of stock shall be released from any such indebtedness by reason of any assignment of his stock, but shall remain liable therefor jointly with the assignee until the said stock be fully paid. Whenever any action is brought to recover any indebtedness against the corporation, it shall be competent to proceed against any one or more stockholders at the same time to the extent of the balance unpaid by such stockholders upon the stock owned by them, respectively, whether called in or not, as in cases of garnishment. Every assignee or transferee of stock shall be liable to the company for the amount unpaid thereon, to the extent and in the same manner as if he had been the original subscriber."

Under this section of the statute it will be observed that the liability of the stockholder is primary, and not collateral or secondary. He is directly liable to the creditor whether the assets of the corporation are sufficient to pay its debts or not. The creditor can collect either from the corporation or from the stockholder, as he sees fit, as we have held that the creditor may sue the corporation and garnish the stockholder at the same time; that it is not necessary to obtain a judgment and have an execution returned "no property found" before instituting the garnishment proceeding, but that both may be set on foot at the same time. (*World's Fair Excursion Co.* v. *Gasch*, 162 Ill. 402.) This, however, is where the stockholder is still liable to the corporation. It is for the unpaid portion of his subscription. In such case an action accrues to the creditor and against the stockholder as soon as the debt against the corporation falls

due, and the Statute of Limitations runs in favor of the stockholder from that time. In the case at bar, however, no right of action accrued to the creditor under section 8, *supra*, for the reason that, as between the corporation and the stockholder, the stock subscription was fully paid. A garnishing creditor in a proceeding by garnishment can assert no greater rights against the garnishee than could his debtor. (*Webster* v. *Steele*, 75 Ill. 544; *Richardson* v. *Lester*, 83 id. 55.) Consequently appellants' right of action against the stockholders in the case at bar did not accrue until they had a right to proceed, in equity, to set aside the fraudulent arrangement by which the stock had been issued in exchange for property received by the corporation at a fraudulent over-valuation. In that respect this case differs from one where, as in *World's Fair Excursion Co.* v. *Gasch, supra,* the corporation has accepted from the subscriber, in full payment of the subscription, a sum of money less than the amount of the subscription. In such case there is no consideration for the satisfaction of the unpaid portion of the subscription, and the corporation can maintain a suit therefor.

The question whether a simple contract creditor can maintain an action under section 25, *supra,* was considered by this court in *Butler Paper Co.* v. *Robbins,* 151 Ill. 588. It was there objected, as here, that the complainant "had no standing in a court of equity to maintain a bill to wind up the corporation,—such a suit can only be brought after the recovery of judgment and the return of execution unsatisfied," and this court, although holding that in that case any objection to the jurisdiction of the court had been waived, still said in reference to this point (p. 620): "We think this objection is not well taken. The printing company was incorporated under the general act of April 18, 1872, and had ceased doing business, leaving debts unpaid, and the complainant was one of its creditors and stockholders, and, under section 25 of said act, had the right, we think, to file this bill. In *Hunt* v.

*LeGrand Roller Skating Rink Co.* 143 Ill. 118, this court said:
'It is provided in said section that suits in equity may
be brought against a corporation and its stockholders
and all persons liable in any way for the debts of said
corporation, but it is not stated in express terms by whom
such suits in equity may be prosecuted.    It is manifest,
however, that the statute provides a remedy in the na-
ture of a creditor's bill, and is designed to aid creditors
in the collection of their debts.'"

If the construction which appellants place on sec-
tion 25, *supra*, which was first enacted in 1872, is correct,
then the creditor has no greater right under that section
than he has under section 49, *supra*, which was enacted in
1845, and its enactment, so far as it confers rights upon
creditors, was useless.

It will be observed that by one clause of that section
the right to maintain a suit in equity is conferred if the
corporation shall permit an execution, issuing from a
court of record, to be returned "no property found or to
remain unsatisfied for not less than ten days" after de-
mand.    This is said by appellants to be necessary before
any suit can be maintained by any creditor under that
section at all.    If so, what, then, is the meaning of the
words following almost immediately in the section, "or
shall dissolve or cease doing business, leaving debts un-
paid?"    It seems apparent that the right to maintain a
suit was thereby conferred upon a creditor without any
reference to whether an execution had issued for the
collection of his debt.    By section 8, obtaining a judg-
ment and the issuance and return of an execution *nulla
bona* as a condition precedent to garnishing the stock-
holder was dispensed with.    The purpose of the legisla-
ture in enacting that section was to facilitate a recourse
to the unpaid subscription, and it seems reasonable to
conclude that the same purpose was in view in enacting
section 25, and that the latter section was intended to ac-
complish in suits in equity what section 8 accomplished

at law, namely, to enable the creditor to proceed against the stockholder without the delay incident to the recovery of a judgment and the issuance of an execution against the corporation.

It is urged, however, that if section 25 be construed as permitting the creditor to proceed thereunder before reducing his chose in action to judgment, a construction will be placed upon that section which will render it unconstitutional, for the reason that the parties would thereby be deprived of the right to a trial by jury. The constitution of 1870 guarantees the right to a trial by jury practically as that right existed at the common law. It does not give the right to a jury trial in any class of cases in which that right did not exist at common law.

Where a new class of cases is directed by the legislature to be tried in chancery, and it appears, when tested by the general principles of equity, that they are of an equitable nature and can be more appropriately tried in a court of equity than a court of law, the chancellor will have the right, as in other cases in chancery, to determine all questions of fact without submitting them to a jury. (*Ward* v. *Farwell,* 97 Ill. 593; *Chicago Mutual Life Indemnity Ass.* v. *Hunt,* 127 id. 257.) The constitutional provision in question "introduced no new rule of law, but merely preserved the right already existing. It does not apply to suits in equity, or to any statutory proceeding to be had in courts of equity." *Keith* v. *Henkleman,* 173 Ill. 137.

The remedy given by this section is one which did not exist at common law. The relief sought may involve the taking of an account between the corporation and the stockholder and between the various stockholders, the appointment of a receiver and a marshaling of the assets of the corporation. It is apparent that the machinery of the common law is inadequate for these purposes and that the right of a trial by jury does not exist.

In this case we have been supplied with exhaustive briefs. The examination of the cases to which we have been referred from jurisdictions other than our own has been of little assistance, for the reason that the laws fixing the liability of stockholders and regulating the procedure to enforce that liability vary so radically in the different States, that decisions announced outside our own commonwealth afford no guide in placing a construction upon section 25 of our act on corporations.

We hold that a right of action accrues to a creditor against a stockholder whose stock, as between the shareholder and the corporation, has been paid for by property taken at a fraudulent over-valuation, whenever the corporation ceases doing business, leaving debts unpaid, and that the creditor may proceed immediately to enforce this right of action in equity, under section 25, *supra*, without first reducing his claim against the corporation to judgment at law.

The liability of the stockholder resides in the fact that he has subscribed for and taken stock, for which the law requires he should pay, in money or property, the full amount of his subscription. His liability to the creditor is not a liability upon his contract of subscription and is not dependent upon any call being made upon him by the corporation, as in case where the corporation seeks to collect the same, but is a liability resulting from the statute, consequent upon the fact that he is a shareholder, and the action of the creditor against him is a "civil action not otherwise provided for," within the meaning of section 15 of chapter 83 of Hurd's Revised Statutes of 1901, and is therefore governed by the five year Statute of Limitations.

It is suggested, however, that the creditor has the right to elect whether he will proceed under section 25, *supra*, or section 49, *supra;* that if he proceeds under the latter he cannot bring a suit against the stockholder until he has had an execution returned "no property found,"

and that the statute therefore would not begin to run against him until the execution was so returned, so far as his remedy under the latter section is concerned. This would place the power in the hands of the creditor to extend the Statute of Limitations far beyond any period of time contemplated by the legislature. If his debt against the corporation was evidenced by writing, he has ten years in which to bring his suit at law against the debtor, and after the recovery of a judgment he may take out an execution at any time within seven years, and if he may institute a proceeding against the stockholder at any time within five years thereafter, it makes a period of twenty-two years after the maturity of the debt against the corporation within which the creditor may proceed against the stockholder. It is manifest that such a holding would be against that public policy which has led to the enactment of statutes of limitation. That act "was intended as a statute of repose, to prevent fraud and to afford security against stale demands which might be made after the true state of the transaction may have been forgotten or be incapable of explanation by reason of the death or removal of witnesses," and this purpose should be kept in view in construing that statute.

Where two methods are provided by statute by which a creditor of a corporation may enforce the liability of a stockholder for his unpaid stock subscription, the Statute of Limitations begins to run whenever a right accrues to the creditor to proceed directly against the stockholder by either method, and when the statutory period, counting from that time, has elapsed, the right to proceed by either method is barred. *Conklin* v. *Furman*, 48 N. Y. 527; *Cottell* v. *Manlove*, (Kan.) 49 Pac. Rep. 519; *First Nat. Bank* v. *Greene*, 64 Iowa, 445.

There is nothing whatever in the relation of a stockholder to the corporation or to a creditor on which to base the argument of counsel for appellants that the unpaid subscription is, in the subscriber's hands, a trust

fund for the benefit of the creditors of the corporation, and that, consequently, the Statute of Limitations does not apply. The relation of the stockholder who has not paid for his stock, to the corporation or the creditor, is the ordinary one of debtor.

The Martin-Barriss Company is the complainant that was made a party, upon petition, after the filing of the original bill, in the manner herein above mentioned, and it is averred, as to that company, that it had no knowledge of the fraud, by which it was wrongfully made to appear that appellees had fully paid for their stock, until the month of May, 1901, and it is therefore said that as to that company the Statute of Limitations did not begin to run until that time.

Section 22 of chapter 83 of Hurd's Revised Statutes of 1901 provides: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

It will be observed that to prevent the running of the statute it must be shown that the person liable to the action "fraudulently conceals the cause of such action." No such fraudulent concealment is averred. The mere statement that the creditor had no knowledge of the existence of the cause of action does not amount to a statement that the person liable has fraudulently concealed the cause of action, and is not sufficient to prevent the application of the Statute of Limitations. *Conner* v. *Goodman*, 104 Ill. 365.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*