JOSEPH L. CAHALL, Receiver of Lewes Fisheries Company,

*vs.*

DAVID W. BURBAGE.

*Kent, Oct. 26, 1922.*

An allegation in a bill for an accounting, stating that the fraud of the defendant was not known until after complainant's appointment as receiver on February 17, 1919, is to be taken as true if demurred to.

Where there is no knowledge of a fraud, equity attributes no laches, unless the want of knowledge is attributable to the culpable negligence of the defrauded party.

The failure of stockholders to examine the corporate records and books and thus acquire knowledge of the wrongful acts of the corporate officers and directors is not to be attributed to their negligence, for they have a right to assume that the officers and directors will be faithful to their trust, and hence where the fact that the directors in September, 1911, fraudulently voted themselves stock of the corporation contrary to *Constitution, Article IX,* § 3, did not become known to the stockholders until a receiver was appointed on February 17, 1919, laches could not antedate the appointment of the receiver.

Laches *held* not imputable to complainant bringing suit against a corporate director for an accounting and for fraudulent acquisition of stock, where the period within which the suit was brought after discovery of the fraud was less than the statute of limitations and the slight delay was explained by the pendency of other litigation of a character showing that complainant was diligently pursuing legal proceedings connected with the instant suit, and defendant was not prejudiced by the delay.

*Revised Code* 1915, *Paragraphs* 1935, 1936, relating to subscriptions to capital stock and payment thereof as the directors direct, and providing the procedure to be followed by directors to collect amounts owing on stock, do not offer an adequate remedy at law to compel an accounting by a former director, where no assessment or call, as provided in *Section* 1936, was ever made upon defendant director, the latter with six others having a controlling interest.

A bill against a former director and vice-president of a corporation, for an accounting, and to have certain acts in securing shares of stock to himself declared unlawful, is not a bill to recover damages, but one coming under equity juridsiction.

STATEMENT OF THE CASE. This is a demurrer to a bill filed by the receiver of Lewes Fisheries Company against the defendant, a former director of said company. The complainant was appointed receiver on February 17, 1919. The bill charges that fifteen shares of the capital stock of the company were fraudulently and unlawfully issued to the defendant. The fraud and illegality in the issuance of said shares of stock, the bill alleges, consisted in this: That while the defendant was a director and vice-president of the company, he pretended to subscribe to fifteen shares of its capital stock on September 18, 1911; that on September 21, 1911, at a directors' meeting, a motion, seconded by the defendant, was carried by which each director was voted fifteen shares of stock for services in organizing the company and commissions for selling its stock; that thereupon the defendant, being vice-president of the company, directed that fifteen shares of the capital stock be issued to himself as full paid and non-assessable; that a certificate for said shares, fullpaid and non-assessable, was in fact issued to him in September, 1911; that the issuance of the stock for such a consideration was unlawful because contrary to *Section* 3, *Article IX*, of the Constitution of this State, which provides, as follows:

"No corporation shall issue stock, except for money paid, labor done or personal property. or real estate or leases thereof actually acquired by such corporation; * * *"

and that it was fradulent, because all the directors who voted for the motion authorizing the issuance of stock to themselves, upon the consideration above referred to, had a personal interest in said motion and were disqualified from voting on the same. The

bill charges that a certain dividend amounting to three hundred dollars was declared upon said fifteen shares of stock and received by the defendant in January, 1912; that sometime in the year 1912, he sold and transferred the stock to an innocent purchaser for value, receiving full consideration therefor; and that since January, 1912, several cash dividends aggregating on December 20, 1916, the sum of six hundred dollars, and two distribution dividends, following proceedings for the dissolution of the corporation, amounting to two thousand four hundred and seventy-five dollars, were paid on the fifteen shares of stock formerly held by the defendant.

The bill also alleges that the complainant in July, 1919, filed his bill of complaint in this court against all the persons (except this defendant) who were directors of Lewes Fisheries Company from the time of its organization in 1911 down to its dissolution, and others; and that in said bill of complaint the action of the directors in voting to themselves the fifteen shares each of the capital stock, was complained of (see *Cahall v. Lofland*, 12 *Del. Ch.* 299, 114 *Atl.* 224, for the case before the Chancellor, and *post p.* 384, 115 *Atl.* 458, for same case on appeal); and that the complainant was advised and believes that this defendant could not properly have been made a party to that bill of complaint. That in said suit the Chancellor held that the voting of the fifteen shares of stock to each of the directors by themselves as above described, was unlawful and directed the co-directors of the defendant to pay back the several sums of money received by them as current dividends and distribution dividends on all the shares of stock issued under color of the said motion of September 21, 1911, except on the fifteen shares secured by this defendant, the last named shares not being the subject of the said suit.

It is further charged that the alleged unlawful acts of this defendant and his co-directors in regard to the fifteen shares so issued to him as before described, were unknown except to the persons concerned in said unlawful acts until after the complainant was appointed receiver of Lewes Fisheries Company.

It is also charged that at the time when the defendant, acting as director and vice-president of the company, engaged in the alleged unlawful acts concerning the fifteen shares of stock, he was a

trustee for the said company and for its stockholders, and that such relationship existed at the time he assigned and transferred the said fifteen shares to an innocent purchaser.

The bill charges that the defendant is bound in equity and good conscience to account for the several sums of money of which the Lewes Fisheries Company and its stockholders have been deprived because of the alleged wrongful acts of the defendant. Such an accounting, together with a decree that the acts of the defendant in securing the fifteen shares of stock are unlawful, is prayed for.

The defendant has demurred to the bill upon grounds appearing in the Chancellor's opinion.

*Henry Ridgely* and *George M. Fisher, Jr.,* for the complainant.
*James M. Tunnell,* for the defendant.

THE CHANCELLOR.    The defendant's demurrer raises two objections—first, that the complainant has been guilty of laches; and, second, that this court is without jurisdiction.

1. As to the question of laches.    Until the complainant was appointed receiver on February 17, 1919, the company was in the management and control of those individuals who are charged with having been joint wrongdoers with the defendant in the issuance of the fifteen shares of stock to each director and with having shared with the defendant in the enjoyment of like personal benefits arising from the same alleged breach of duty.    This being so, laches cannot be said to have begun to run, if at all, until after the date of February 17, 1919, when the stockholders, through the agency of the receiver, first acquired knowledge of the alleged wrongful conduct.    The bill alleges in its fourteenth paragraph:

"That the unlawful acts of the said David W. Burbage and of his co-directors in regard to the fifteen (15) shares of stock so issued to him as hereinbefore set forth, were unknown except to the persons concerned in said unlawful acts until after the appointment of your orator as Receiver of Lewes Fisheries Company."

On demurrer this allegation is, of course, to be taken as true.

Where there is no knowledge of a fraud, equity attributes no laches, unless the want of knowledge is attributable to the culpable negligence of the defrauded party.    4 *Pomeroy's Equity*

*Jurisprudence,* (*4th Ed.*) § 1447, *p.* 3434; Id. § 1448, *pp.* 3436, 3437. The failure of stockholders to examine the corporate records and books and thus acquire knowledge of the wrongful acts of the corporate officers and directors, is not to be attributed to their negligence, for they have a right to assume that the officers and directors will be faithful to their trust. *Cahall v. Lofland, et al.,* 12 *Del. Ch.* 299, 114 *Atl.* 224, 234; *Elder v. Western Mining Co.,* 237 *Fed.* 966, 150 *C. C. A.* 616; 3 *Cook on Corporations,* (*7th Ed.*) § 731; 6 *Fletcher, Cyclopedia of Corporations,* § 4072, *p.* 6951; *Id.* § 4076, *p.* 6964.

Therefore, whatever laches there may be, cannot be said to have ante-dated the appointment of the receiver on February 17, 1919. The defendant, in his argument, seeks to ascribe the alleged laches to an earlier beginning. He states that in October, 1917, a bill in equity was filed by a stockholder alleging gross mismanagement of the company, and in considering whether there has been laches, he accordingly counts time as running against relief in behalf of stockholders from that date. One difficulty with this view, if there were no other, is that the case is now on demurrer; and the bill not only makes no allegation regarding the suit in October, 1917, from which knowledge is sought to be fastened upon the stockholders, but absence of all knowledge is alleged to have prevailed until the receiver was appointed on February 17, 1919.

It must, therefore, be taken as true that laches, if any, did not commence until February 17, 1919, the date of the complainant's appointment as receiver.

The present bill was filed on July 16, 1921, a period of two years and five months after the complainant's appointment. If the periods of limitation prescribed by the statute as a bar to actions at law be followed for analogous guidance in equity, this bill is safe from attack on the ground of laches, for it was filed within three years after knowledge of this cause of action was obtained.

The question of whether the issuance of the fifteen shares of stock to each of the directors of the company was unlawful and fraudulent, presents not alone a question of fact but as well one of law. As to six of the directors, who consituted the whole board with the exception of the defendant in this cause, the complainant

filed a bill of complaint against them in this court on July 28, 1919, stating, amongst other causes of action, the alleged illegal and fraudulent conduct connected with the issuance of fifteen shares of stock to each of the board. This was within six months after knowledge of their wrongful conduct had been obtained. The defendant in the pending cause was not made a party to that cause, because, as stated by the bill, the complainant was advised and believes that the defendant could not properly have been joined as a party defendant therein. Why this was so, does not appear. The demurrer, however, admits the fact to be true. That being so, the complainant contends that he was justified in deferring separate action against the defendant until after the question of the propriety of the issuance of the fifteen shares of stock to each of the directors had been passed upon in the other litigation. Entertaining this view, he deferred filing the present bill against this defendant until a decree had been handed down by the Chancellor in the other case (against the six co-directors of the defendant) determining the illegality of the issuance of the fifteen shares of stock authorized by the directors to be issued to each of themselves. This decree was entered June 14, 1921. On July 16, 1921, only thirty-two days thereafter, the pending bill was filed.

These facts do not show laches on the part of the complainant. In patent cases, it has been held that if the plaintiff has been diligently asserting his rights by litigation in the courts, he is not, after having obtained a decision sustaining his claim, to be defeated by a charge of laches when he then proceeds to seek relief against others for a wrong similar to that which judicial inquiry had, in the other litigation, found to exist. *U. S. Mitis Co. v. Detroit Steel & Spring Co.*, 122 *Fed.* 863, 59 *C. C. A.* 589; *Stearns Riger Mfg. Co. v. Brown*, 114 *Fed.* 939, 52 *C. C. A.* 559. In view of the fact that a final judgment or decree sustaining a patent is not binding except upon parties to the suit and their privies (30 *Cyc.* 1054, 1055), the principle of these cases is applicable here. In *Central R. R. Co. of N. J. v. Jersey City*, (D. C.) 199 *Fed.* 237, 245, it is said:

"Delay pending other proceedings has frequently been held excusable, not only where the termination of such proceedings was necessary for the ascertainment of facts involved in the later suit, but also where the former suit

had a similar object, but proved unavailing. 16 *Cyc.* 152, 162, 167, 175; *O'Brien v. Wheelock,* 184 *U. S.* 450, 493, 22 *Sup. Ct.* 354, 46 *L. Ed.* 636; *Galliher v. Cadwell,* 145 *U. S.* 368, 12 *Sup. Ct.* 873, 36 *L. Ed.* 738; *Old Colony Trust Co. v. Dubuque L, & T. Co.,* (*C. C.*) 89 *Fed.* 794."

No long length of time has run in this case since knowledge of the alleged wrongs was acquired, not even so long a time as the minimum period defined in the statute of limitations, and what little delay there was is explained by the pendency of the other litigation of a character which, when considered, shows that the complainant was diligently seeking a legal determination upon a question precisely similar to the one in controversy here.

There is, therefore, no showing of laches. The more especially is this true because there is no appearance that the delay in any wise caused the defendant to alter his situation or in any manner occasioned him to prejudice himself.

2. As to the question of jurisdiction. The contention of the defendant under this head is, first, that there is an adequate remedy at law under the provisions of *Paragraph* 1935 (*Section* 21) and 1936 (*Section* 22) of the *Revised Code of* 1915. This contention was made at the argument, but not on the brief. These paragraphs are a part of the General Corporation Law of this State. *Paragraph* 1936 (*Section* 21) provides for subscriptions to capital stock and payment thereof after certain prescribed notice, in such amounts and at such times as the directors shall direct. *Paragraph* 1936 (*Section* 22) provides that in case any stockholder fails to pay any installment, or call, upon his stock, the directors may collect the amount thereof by an action at law against the stockholder, or they may expose the delinquent's stock at public sale and sell enough thereof to pay the call, or assessments then due; and if no bidder is had to pay the amount due on the stock, and the same has not been collected by an action at law, the stock, as well as all amounts previously paid thereon, shall be forfeited to the corporation. It is manifest that these sections do not supply any remedy at law in this case, because there does not appear ever to have been any assessment or call made upon the defendant.

The defendant makes a second contention, viz.: That the bill seeks solely to recover damages and, therefore, is not cogniza-

able in equity. I do not view this bill as of that sort. The equity which the bill sets up is fraud in acquisition of the stock in question. The alleged fraud consists in the act of the directors, of whom the defendant was one, whose relationship to the corporation was that of trust and confidence, in so behaving in their offices as to reap personal gain. The bill does not pray for any assessment of damages. It seeks an accounting and a decree for the return of the sums of money charged by the bill to have been diverted from the company's treasury by reason of the unlawful and fraudulent acts set forth.

The bill, therefore, comes under a well-recognized head of equity jurisprudence. The defendant cites no authority which holds under such circumstances as these, that the remedy sought is to be regarded as solely for damages for which the law affords an adequate remedy.

In reaching the conclusion that the demurrer should be overruled, I do not wish to be understood to have formed a conclusion upon certain points urged by the defendant's contentions. I refer to those views which he advanced with respect to the principles upon which the defendant, if the complainant should succeed, should be held to liability upon an accounting. Such questions are open. It seems clear that the complainant, on the showing of the bill, is entitled to some relief; whether in precise accord with the complainant's theory will, in case he sustains his bill after full hearing, be determined.

An order will be entered overruling the demurrer.