HENRY T. BUSH and C. RAY PHILLIPS, Receivers of Missouri-Kansas Pipe Line Company, and MISSOURI-KANSAS PIPE LINE COMPANY,

*vs.*

HILLMAN LAND COMPANY, JOHN H. HILLMAN, JR., and HENRY T. BUSH and C. RAY PHILLIPS, as Receivers of Frank P. Parish & Co.

*New Castle, June 21, 1938.*

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, for complainants.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for demurrants.

THE CHANCELLOR: The bill charges that the shares sought to be cancelled were issued by the company under circumstances which make their issuance and their continuance as outstanding shares, unauthorized, illegal and void. Wherefore the bill seeks a decree declaring the shares and the certificates evidencing them to have been illegally issued, requiring the shares and certificates to be surrendered for cancellation and that the court formally cancel the same. The bill charges the present holder with notice.

The alleged wrongful issue of the stock occurred in February, 1931. The bill was filed on April 15, 1937.

The first ground of demurrer which is presented is that the suit is barred by the statute of limitations. There is no statute of limitations in this State applicable to causes in equity. Our statute is applicable only to actions at law. But the Court of Chancery in administering its equity jurisdiction will in proper cases apply the statute of limitations as a bar, notwithstanding the statute is in terms applicable to law actions only. It is contended that the instant case is a proper one for the application of the statute. If so, then the suit is undoubtedly barred, for the alleged unlawful issuance of the stock occurred six years before the bill was filed, and the applicable statutory period is three years.

The question, therefore, is whether the case is a proper one for the application of the statute of limitations governing actions at law. In 1845 the old Court of Errors and Appeals of this State in the case of *Perkins v. Cartmell's Adm'r., 4 Har.* 270, 42 *Am. Dec.* 753, stated the following to be the law:

"Hence it is an established rule, that where the statute bars the legal remedy, it shall bar the equitable remedy in analogous cases, or in reference to the same subject matter, and where the legal and equitable claims so far correspond, that the only difference is, that the one remedy may be enforced in a court of law, and the other in a court of equity."

The demurrants treat this case as one falling within the field of the concurrent jurisdiction of law and equity, and, so treating it, make the point that the complainants by choosing equity rather than law as the forum should not be permitted to escape the bar, which the statute would impose had they brought their suit at law.

Is the case one falling within the concurrent jurisdiction? Professor Pomeroy has devoted a chapter of his treatise on *Equity Jurisprudence* to a discussion of the concurrent jurisdiction. It is found at *Section* 173, *et seq.*, in the first volume of the fourth edition of his work. A case he says is within the concurrent jurisdiction when "the remedies administered under a given state of circumstances, by equity and by the law, are substantially the same—recoveries of money, or of specific tracts of land, or of specific chattels." (*Section* 173.) Again he says: "the remedy—that is, the substantial relief obtained by the decree—must be of the same general nature as that which would be obtained by means of an action at law under like circumstances." (*Section* 174.)

The cases in our own State are illustrative. For instance in *Perkins v. Cartmell's Adm'r., supra,* the bill was against a devisee subject to a legacy for an account and payment of the legacy. The court held that as no action at law would lie for the legacy, equity would refuse to apply the legal bar of the statute of limitations. On the other hand, in *Dodd, Adm'r., v. Wilson,* 4 *Del. Ch.* 399, as the relief sought was for the payment of money, the Chancellor held that as there was an ample remedy at law to secure the same relief, the bar of the statute of limitations was effectively interposed. A case of the same type was *Gootee,*

*et al. v. Riggin, et al.,* 12 *Del. Ch.* 91, 107 *A.* 452; and the principle of these two cases is recognized in *Haas v. Sinaloa Exploration and Development Co.,* 17 *Del. Ch.* 253, 152 *A.* 216. In *Cochran v. F. H. Smith Co.,* 20 *Del. Ch.* 159, 174 *A.* 119, where an adequate legal remedy existed to accomplish the same identical relief as was sought to be accomplished by means of an accounting in equity, the bar of the statute of limitations was allowed as fully as it would have been at law.

Now the question arises in the instant case—what remedy is there at law to achieve the result which the complainants seek by their bill to accomplish? Here the thing which is sought is the undoing of a transaction which, it is charged, was entirely without lawful authorization, viz., the issuance of twenty-five thousand shares of corporate stock. It is sought to secure this relief by a decree of cancellation directed against the shares of stock and a surrender for cancellation of the certificates purporting to be evidence of the stock's outstanding existence. There is no remedy known to the legal tribunals by which that result can be accomplished.

It may well be true, as the demurrants contend, that if the stock was issued without consideration, it was not void but only avoidable, and that it was accordingly permissible for the corporation to pursue the remedies provided in the General Corporation Law to enforce payment thereon for the benefit of creditors (*Cooney Co. v. Arlington Hotel Co.,* 11 *Del. Ch.* 430, 106 *A.* 39, 7 *A. L. R.* 955; *Finch, et al., v. Warrior Cement Corp., et al.,* 16 *Del. Ch.* 44, 61, 141 *A.* 54, 62) ; or it may be conceded *arguendo* without deciding, that assumpsit or trover would lie for the value of the stock. Even so, such remedies as those are in affirmance of the stock as outstanding stock. The corporation has the right to insist, however, that the stock shall be stripped of its character of issued and outstanding stock. *Sohland v. Baker,* 15 *Del. Ch.* 431, 141 *A.* 277,

58 *A. L. R.* 693; *Blair v. F. H. Smith Co., et al.,* 18 *Del. Ch.* 150, 156 *A.* 207. The law forum has no remedy whereby that result can be obtained. This suit is one where the non-existence of alleged stock is sought to be decreed and all appearance of its pretended existence obliterated. The fundamental concept lying at its foundation is equitable in nature and not within the scope of the law's notice. The remedies at law suggested by the demurrants which necessarily affirm the stock to be irrevocably outstanding and which seek to recover all or part of the consideration therefor, are inharmonious with this concept and therefore inapplicable to its assertion.

The demurrants, however, insist that the legal remedy of replevin is available to accomplish the very same relief which is sought by the bill in this case, viz., the specific recovery of the stock. Indeed this is the remedy at law which they stress rather than the other ones heretofore mentioned which look only to judgments for money as the ultimate outcome. But to maintain an action of replevin, there must be a preliminary seizure by the Sheriff of the chattels, the possession of which the action seeks to recover. Such is the effect of *Frick, Adm'r., v. Miller,* 7 *Boyce,* 366, 107 *A.* 391, where it was held that because certain articles of jewelry which were described in the writ were not taken by the sheriff, the jury was not permitted to consider those articles in rendering its verdict. Furthermore replevin being a possessory action, its ultimate object primarily is the securing a judgment *pro retormo habendo,* which presupposes a preliminary seizure and final delivery of possession to the plaintiff in an actual manual sense.

Now since shares of stock in a corporation are intangible property incapable of manual seizure and delivery (*Woods v. Spoturno,* decided by the Supreme Court of Delaware. 7 *W. W. Harr.* 295, 183 *A.* 319, 323; *Fowler v. Dickson,* 1 *Boyce,* 113, 74 *A.* 601), it must follow that the preliminary seizure which the writ contemplates and the

ultimate delivery of possession which it is the primary object of the replevin ultimately to accomplish, are impossible of attainment. Therefore replevin does not lie for shares of stock. It has been so held in California where replevin appears to go by the name of an action for claim and delivery. *Bell v. Bank of California,* 153 *Cal.* 234, 94 *P.* 889; *Ashton v. Heydenfeldt;* 124 *Cal.* 14, 56 *P.* 624; *Winterburn v. Sheriff,* 61 *Cal. App.* 531, 215 *P.* 406. There is no statute in this State providing a substitute for the actual seizure and ultimate delivery which are necessary to sustain and make effective an action of replevin at law.

The same reason which makes the action of replevin unavailable as a legal proceeding to seize and cause the delivery of stock, viz., the non-seizability of the shares and their incapacity to be manually delivered, operates likewise to render the action of detinue, which is a possessory action, unavailable for the recovery of shares of stock. *Small v. Wilson,* 20 *Ga. App.* 674, 93 *S. E.* 518. On the authority of cases cited in this and the preceding paragraph of this opinion, it is said in 11 *Fletcher, Cyclopedia of Corporations,* (*Perm. Ed.*) § 5097, *p.* 82, that neither replevin nor detinue will lie for recovery of shares of stock. In 3 *Cook on Corporations,* (*8th Ed.*) § 577, it is asserted that detinue will not lie for shares of stock. *A fortiori,* it would seem, replevin would not lie.

A distinction is to be drawn between an action of replevin or detinue to recover shares of stock and such an action to recover the certificates evidencing the shares. While those actions will not lie for the former, they will in proper case lie for the latter. If a person being the lawful owner of shares of stock has the certificate therefor wrongfully withheld from him by another, the physical certificate is of such value in and of itself as to fall in the category of chattels for the recovery of which either replevin or detinue will lie. See 11 *Fletcher, Cyclopedia of Corporations,* (*Perm. Ed.*) § 5093. The authorities cited

by the demurrants bearing on the present aspect of the case are within this principle. Here, we are not concerned with the recovery of certificates of stock which admittedly represent outstanding shares and are being withheld from the owner thereof. We are concerned with the recapture of shares purportedly outstanding and their cancellation, and the incidental destruction of the certificates which pretend to represent them.

There is then no remedy whatever at law, not to speak of an adequate remedy, to which the complainants can resort for invalidating the shares in question and obliterating the appearance of their existence as outstanding shares. The case, then, is not one where the act of limitations at law is applicable in equity.

The demurrants cite *Jackson v. Anderson*, 355 *Ill.* 550, 189 *N. E.* 924, as holding that the statute of limitations is a bar to a suit in equity to cancel stock issued without consideration. I do not so interpret the case. The decision appears to me to rest on the defense of laches. Reference therein to the statute of limitations appears to be only to point out that the delay was such that had the action been at law, time would have barred it; the converse of a like reference was made in *Cahall, Rec'r., v. Burbage*, 13 *Del. Ch.* 299, 305, 119 *A.* 574, where it was pointed out that the delay was not so long that, had the action been at law, it would not have been barred. In the *Burbage Case*, the decision was on the defense of laches, notwithstanding the reference in the opinion to the statute of limitations. So also was the decision in *Jackson v. Anderson, supra*, in Illinois. There was more point in the reference to the statute of limitations in the Illinois case than in the *Burbage Case*, since the lower court in Illinois had decreed the payment of the money consideration for the stock, and in default of its payment, cancellation. In Illinois, consideration for stock is recoverable in an action at law the

same as is any claim against an ordinary debtor. *Parmelee v. Price,* 208 *Ill.* 544, 561, 70 *N. E.* 725.

Other cases cited by the demurrants as sustaining the proposition that the statute of limitations is applicable to a case in equity of the instant sort, are either cases where the decision was plainly rested on the doctrine of laches and not on the act of limitations, as in *Kimbell v. Chicago Hydraulic Press Brick Co.,* (8 *Cir.*) 119 *F.* 102, and *Calivada Colonization Co. v. Hays,* (*C. C.*) 119 *F.* 202, or where the statute of limitations was by its own express provisions made applicable to equitable causes, as in *East Lake Lumber Co. v. Van Gorder,* 105 *Misc.* 704, 174 *N. Y. S.* 38. No such statute exists in this State.

In speaking of the concurrent jurisdiction in equity, Professor Pomeroy in § 175, *p.* 222 *of Vol.* 1 (*4th Ed.*), of his treatise on *Equity Jurisdiction,* points out that for a case to lie in the field of concurrent jurisdiction of law and equity, attention is not to be paid to external forms and incidental accompaniments. It is sufficient if the relief sought in equity be of the same general nature as that granted by the law courts. *Hurdle v. American Security & Trust Co.,* 59 *App. D. C.* 58, 32 *F.* 2d 954, cited by the demurrants is illustrative of Prof. Pomeroy's text. In that case the complainant sought specific performance of a contract for services made between her and the defendant's testate by the terms of which the deceased promised, in consideration of plaintiff's services, to devise and bequeath to her one-half of her estate. The court held that as an action at law was open to the complainant to secure full and adequate relief for the alleged breach by the deceased of the contract, the complainant could not escape the bar of the statute of limitations which would confront her at law by coming into equity with a bill for specific performance. The relief in equity would be, in the phrase of Prof. Pomeroy, of the same general nature as that which the law courts could grant, viz., compensation under the contract.

That case therefore is quite distinguishable from the instant one.

My conclusion is that the case is not one where the statute of limitations is applicable. Any delay which has attended the institution of the suit, if it be such as to constitute a defense, is operative not by the uncompromising rule of the statute of limitations, but according as it gives rise or not to the principles that inhere in the equitable doctrine of laches.

And so the demurrants by their demurrer advance the alternative proposition, that if the suit is not barred by the statute of limitations, it is barred by laches.

In this State it has been held that the defense of laches may be raised by demurrer. But the case may be one where it is not plain on the face of the bill that the court can safely say that the delay in suing was sufficiently prolonged under all the circumstances as to constitute laches. In *Scotton, et al., v. Wright,* 13 *Del. Ch.* 214, 224, 117 *A.* 131, 136, the defense of laches was raised by demurrer to the bill and, because the Chancellor considered that the question of laches could be better disposed of after answer and full hearing, the defendants withdrew their demurrer. What constitutes laches is so unconfined to any particular fact patterns and so dependent for its demonstration on the facts and circumstances of each case, that the court should be quite clearly of the opinion that it exists before saying so on a demurrer to a bill. Here the only features relied on as showing laches so far as the bill discloses is the mere lapse of time—six years from when the alleged wrong was done to when the bill was filed. In *Martin v. Martin,* (*Del. Ch.*) 74 *A.* 864, decided by Chancellor Nicholson, a delay of twenty-six years in filing a bill for relief against a conveyance made by a trustee in an alleged repudiation of his trust, was held to be fatal on demurrer in the absence of allegations of fact explaining and excusing

the delay. Where delay for so long a time as twenty-six years has occurred, it is entirely reasonable that the court should demand an explanation before compelling the defendant to answer. But no such flagrancy of inaction appears in this case. The delay is for only six years. The bill undertakes to explain the delay as due to the current existence of a receivership for the corporation whose stock was wrongfully issued as alleged and which is now sought to be cancelled. From the viewpoint of the complainants, the receivers, the delay, so far as the bill discloses, does not appear to be culpable. There is nothing appearing in the bill to show that the demurrants were in any wise injured by it. The demurrants, however, invite the court to take notice of other proceedings in this Court, of briefs filed and arguments advanced by the solicitors in those other proceedings, for the purpose of discovering therein facts and circumstances which, they argue, would show that the delay in filing the present bill is inexcusable. From what I recall of those other proceedings, briefs and arguments, rather imperfectly refreshed as my memory is by the argument of the present case, I am not prepared to say that the question of laches can be satisfactorily passed upon at this stage, even if it be proper for me to take judicial notice of those matters to the extent suggested.

In overruling the demurrer, however, on the ground of laches, it is to be understood that a defense on that ground is not definitely rejected. The defense will be fully reserved to the demurrants, as though it had not been raised on the demurrer. I think it is in the discretion of the court to defer its decision upon that question until the stage of the case has been reached when it can be passed upon in the light of fuller and more illuminating information than is now available.

The demurrants further object that Missouri-Kansas Pipe Line Company is improperly joined as a party. Complainants were appointed receivers for that company and

acted as such since their appointment in 1932. The company was thought to be hopelessly insolvent. It eventually became safely and extensively solvent. The receivers are still in office but their authority to manage the corporate affairs is now exceedingly restricted. Substantially all the assets have been turned back to the corporation and the management of the corporation's business has been restored by order of this court to the corporation's directors and officers, except in respect of a few matters which it has been deemed best should be left in charge of the receivers. In the main, the corporation is functioning as though receivers had never been appointed for it. In those circumstances, I am of the opinion that while the company may not be an indispensable or even a necessary party, it is at least a proper party. The demurrer to the bill because of the joinder of the company as a party will be overruled.

It is objected further that the receivers of Frank P. Parish & Co. are improper parties. The Parish Company seems to have played some part in connection with the issuance and delivery of the stock here sought to be cancelled. No relief is prayed against that company or its receivers. So far as I can discover neither is the Parish Company, nor are its receivers, in any way interested in the subject matter of this suit. No purpose is served by joining the receivers of the Parish Company as parties. The demurrer under this head will be sustained.

Let an order be entered accordingly.