· 144    APPELLATE COURTS OF ILLINOIS.

Standard D. and D. Co. v. Springfield C. M. & T. Co., 146 App. 144.

## Standard Distilling and Distributing Company, Appellee, v. Springfield Coal Mining & Tile Company et al., Appellants.

1. CORPORATIONS—*what not essential to maintenance of proceeding under section 25 of act.* A judgment at law is not essential to the maintenance of a bill filed under section 25 of the Corporation Act.

2. CORPORATIONS—*when "cease to do business" within meaning of section 25 of act.* *Held*, that the purpose of the corporation in question in this case could not have been less than to end its existence as a corporation at a time when it had contracts to fulfill and to remove its assets beyond the reach of those having claims against it.

3. EQUITY—*when use of assumed name does not preclude relief.* A corporation by using a name other than that of its incorporation will not be denied relief in equity in the absence of a showing of injury or loss to the other party by reason thereof.

4. CONTRACTS—*when offer to perform excused.* An offer to perform an act required by contract is not essential where the other party to such contract has peremptorily refused to perform the same.

5. CONTRACTS—*what not gambling option.* *Held*, under the authority of Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 327, that the contract in question in this case did not confer a mere gambling option.

Bill in chancery. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1908. Affirmed. Opinion filed November 17, 1908.

HAMILTON, CATRON & SAMPSON, for appellants.

MAYER, MEYER & AUSTRIAN, JAMES H. MATHENY and EDMUND BURKE, for appellee.

MR. JUSTICE RAMSAY delivered the opinion of the court.

The Springfield Coal Mining and Tile Company, The Jones & Adams Company, H. C. Adams, John S. Jones, Joseph Trutter and Thomas R. Gray have appealed from a decree of the Circuit Court of Sanga-

mon county rendered against them in the sum of $1,626.77 in favor of the Standard Distilling and Distributing Company.

The bill of appellee, as amended, on which decree was rendered, in substance charged that on the 24th day of May, 1889, appellee (a New Jersey corporation) under the name of "The Globe Distillery," entered into a contract with the Springfield Coal Mining and Tile Company (an Illinois corporation) in the words and figures following:

"PEKIN, ILL., May 24, 1899.

We, the undersigned, Springfield Coal Mining and Tile Company, of Springfield, Illinois, agree to furnish the Globe Distillery of Pekin, Illinois, one to three cars of coal per day (at their option) at following rates, Mine run 70 cents, nut at 65 cents, pea at 30 cents per ton and pea and slack at $6.00 per car (f. o. b. Springfield) destination weights to rule.

It is herewith understood and stipulated that the said Springfield Coal Mining & Tile Co. is to give said Globe Distillery all of such coal as is within their power of the grade known as pea and slack coal, this contract to remain in force for one year, beginning July 1, 1899, ending July 1, 1900.

This contract is subject to strikes, unavoidable accidents at mines and transportation on railroads.

The Globe Distillery agrees to take coal on terms as above specified conditioned however that said Globe Distillery is to have the privilege of waiving the rights of said Springfield Coal Mining & Tile Co., for such periods as said Distillery may have occasion to shut down or on account of fire, or any other unforeseen and unavoidable accident.

All coal unloaded during any month by the Globe Distillery is to be paid for the month following.

THE SPRINGFIELD COAL MINING & TILE Co.

By JOSEPH TRUTTER, President.

THE GLOBE DISTILLERY,

By C. H. HERGET, Manager."

In said bill it was further alleged that at the time of the making of said contract such coal mining com-

146    APPELLATE COURTS OF ILLINOIS.

Standard D. and D. Co. v. Springfield C. M. & T. Co., 146 App. 144.

pany was a going concern, operating a coal mine in Sangamon county and was solvent and pecuniarily responsible; that under said contract it furnished coal to appellee from July 1, 1899, up to November 6, 1899, after which date last mentioned it failed and refused, though often requested, to comply with the terms of said contract; that during all that period appellee was ready and willing to accept shipments of coal and pay for the same as specified in said contract whereof the coal mining company had notice; that by reason of the failure of said coal mining company to so furnish coal appellee was compelled to and did purchase from other parties for its needs in lieu thereof, and was compelled to pay and did pay for such coal so purchased $1,626.77 in excess of the amount it would have been compelled to pay under said contract; that on or about October 25, 1899, defendants Trutter, Gray, Jones and Adams entered into a fraudulent combination and conspiracy to wreck the coal mining company and to divide among themselves its assets and to hinder and delay complainant in the enforcement of its contract and the collection of its just demands; that in pursuance of said conspiracy, on October 31, 1899, said Trutter, Gray, Jones and Adams caused a deed to be made by said company whereby said coal mining company conveyed all its tangible property to the Adams Coal Company for the consideration of $50,000, which deed, it was alleged, was a sham and designed as a means to aid in such appropriation of the resources of said coal mining company among said Trutter, Gray, Jones and Adams; that in further pursuance of said conspiracy said Trutter, Gray, Jones and Adams at the same time caused to be assigned by said coal mining company all claims and accounts due and owing to it to said Adams Coal Company, which assignment was also a sham; that said coal mining company had no property subject to execution and that soon after said October 31, 1899, it ceased doing business; that on February 21, 1900, the name of Adams

Coal Company was changed to the Jones & Adams Company. There was the usual prayer for process, etc., and that said Trutter, Gray, Jones and Adams might be each required to pay his *pro rata* share of the debts, and, if necessary, that said deed be set aside, and for such other relief as to the court might seem meet. The issues were closed upon said bill and the cause referred to the master in chancery who took and reported the evidence and his findings thereon to the court. In his report the master in chancery found against the claim as made by appellee and that it was not entitled to the relief prayed for.

Appellee excepted to the findings of the master and upon a hearing the trial court sustained such exceptions and found the equities of the case to rest with appellee and entered a decree directing said appellants to pay to appellee the sum of $1,626.77.

There is no dispute or controversy as to the material facts in the case, appellants basing their contention for reversal upon the claims, first, that a judgment at law was necessary before any relief could be granted to appellee under its bill; second, that upon the facts as admitted appellee was not entitled to any relief; third, that appellee was doing business under an assumed name, to wit, "The Globe Distillery," and not the "Standard Distilling and Distributing Co.;" fourth, that under the contract the purchaser of the coal was bound to furnish cars to appellants for the receipt of its coal at Springfield, which appellee did not claim it had done; and fifth, the contract by its terms was a gambling contract and therefore void.

Appellants first insist that appellee's bill is, of necessity, either a creditor's bill, or a bill in the nature of a creditor's bill, and that in either event, under the rule as announced in Ladd v. Judson, 174 Ill. 344, Austin v. Bruner, 169 Ill. 179, and Dormueil v. Ward, 108 Ill. 216, a judgment at law was necessary, with return of execution *nulla bona,* before such a bill could be maintained. These cases, it will be noticed, had

relation to claims made by one individual or firm against another individual or firm and in no way concerned an attempt to assert a liability where, as here, a corporation had, in effect, ceased to do business, leaving debts unpaid.

Section 25 of Chapter 32 of the Revised Statutes provides that: "If any corporation * * * shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way for the debts of the corporation * * * and each stockholder may be required to pay his *pro rata* share of such debts," etc.

The meaning of this section would seem to be that in case a corporation ceased to do business, leaving debts unpaid, the remedy of the creditors was primarily in a court of equity, and that no judgment at law was requisite to the maintaining of a suit in equity. In Butler Paper Co. v. Robbins, 151 Ill. 588-620, which was a bill against a corporation charging a conspiracy to wreck the same and asking relief akin to that sought to be had in this case, it was held that, although no judgment at law had been obtained, the bill could be maintained. It is true that in that case the court said that the objection to the jurisdiction of the court had been waived by the party making it, yet in Parmelee v. Price, 208 Ill. 544-566, the court there say in effect, in reviewing the Butler Paper Co. v. Robbins case, that such a suit against a corporation and its stockholders could be maintained in equity without the recovery of a judgment and the return of an execution unsatisfied when such corporation shall cease doing business leaving debts unpaid.

The trial court in its decree found that "on October 31, 1899, said Springfield Coal Mining and Tile Company conveyed all its property and accounts receivable to the Adams Coal Company and ceased to do business on or about that date."

The finding of the court seems to have been war-

ranted by the evidence and under the statute entitled appellee to the right to present its bill in a court of equity without having first reduced its claim to judgment in a court of law.

It is not necessary to review the claim of appellant that, upon the facts, the trial court was not warranted in entering the decree appealed from further than to say that the transaction as a whole seemed to have for its purpose one result and only one, and that was to put the Springfield Coal Mining and Tile Company, and its holdings, beyond reach of its creditors. The purpose could not have been less than to end its existence as a corporation at a time when it had contracts to fulfill, and remove its assets beyond the reach of those having claims against it.

Appellants next contend that because appellee was doing business under an assumed name and made the contract in question by the name of ''The Globe Distillery,'' no relief could be awarded appellee. In the bill it was alleged that appellee ''The Standard Distilling and Distributing Company,'' was a corporation organized under the laws of the state of New Jersey, and that it conducted business at Pekin, Illinois, under the name and style of ''The Globe Distillery,'' by which name it executed the contract involved.

No serious question seems to have been made by appellants upon this point in their answer, as they there content themselves by saying that they are not advised that appellee conducted its business at Pekin under the name of ''The Globe Distillery'' without denying that appellee had a right to so conduct its business if it saw fit.

In the absence of injury or loss to appellants by reason of the use of the name ''The Globe Distillery'' instead of the ''Standard Distilling and Distributing Co.,'' we see no reason for releasing appellants from the force of a contract entered into by it with appellee under the former title. In the N. W. Distilling Co. v. Brant, 69 Ill. 659, it was held that where a deed

was made to a corporation by a name varying from the true one, the corporation might sue in its true name, and aver in the declaration that the defendant made the deed to it by the name mentioned in the deed.

Appellants next insist that under the contract involved appellee was bound to furnish cars or offer to do so, at Springfield, in which the seller could load the coal before recovery can be had upon the contract. This contention can have no controlling influence here in view of the fact that the Springfield Coal Mining & Tile Company refused peremptorily to perform the contract sued upon and in no way based such refusal upon appellee's failure to furnish cars.

Appellants' claim that the contract involved gave appellee a mere gambling option and was therefore not enforceable is fully met by the holding in Consolidated Coal Company v. The Jones & Adams Co., 232 Ill. 327, where the contrary doctrine is announced.

The holding of the trial court that the transactions involved were fraudulent as against appellee, was warranted by the evidence, and we are not disposed to disturb the decree.

The decree is affirmed.

*Affirmed.*