No. 13,207.

JACKSON FIRE AND MARINE INSURANCE COMPANY, LIMITED, VS. BERNARD J. WALLE.

| 105 | 89 |
| 113 | 404 |
| 113 | 408 |
| 113 | 409 |
| 114 | 1003 |
| 105 | 89 |
| 119 | 127 |

SYLLABUS.

1. A person who, while a director of a corporation, authorizes and consents to the entering in the books of the corporation of a subscription by him of stock to the amount of five thousand dollars, and who, thereafter, when a member of the financial committee of the company, approves by the letters "O. K." a statement of the condition of the company intended for publication and put in circulation, in which the amount of stock subscribed for is stated to be a given sum, in order to make up which sum his subscription of five thousand dollars has to be included, is estopped from claiming that he is not a stock holder, for the reason that he did not affix his signature to an instrument in which it was declared that he subscribed to five thousand dollars of stock. Proof of his consent to subscribe to stock is not limited to such an instrument.

2. Where a person consents to becoming and becomes a stockholder in a corporation the legal results flowing from that relation cannot be waived by secret understandings between himself and the board of directors that he would not be called on to pay or make good his subscription.

3. The suit of the liquidating commissioners of an insolvent corporation against shareholders for the amounts due on their stock is in the interest of creditors, and the recovery is to be limited by the debts and the costs and expenses of liquidation. (Belknap vs. Adams, 49 Ann. 353.)

ON REHEARING.

1. *Filing copies on appeal.* The filing of copies on appeal in accordance with an agreement of counsel, to supply documents not copied in the transcript, made it necessary to change our decree in unimportant particulars.

2. *Subscription to be turned over to corporation representatives.* The legal representatives of a corporation in insolvent condition and not, in consequence, a going concern, whose creditors seek payment of their claims, are authorized to recover from delinquent subscribers the amount of their subscription, being needed to pay the debts and to equalize rights and liabilities of the stockholders. The authority to collect gives rise to the duty to return, without delay, any amount thus collected over and above the amount needful to pay debts and equalize rights of the stockholders.

3. *Interest.* Interest is only due on shares from the day the subscriber was placed in default.

APPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

*Frank McGloin* for Plaintiff, Appellee.

*Theodore Cotonio* and *Dinkelspiel & Hart* for Defendant, Appellant.

The opinion of the court was delivered by NICHOLLS, C. J.

On the rehearing by BREAUX, J.

### STATEMENT OF THE CASE.

NICHOLLS, C. J.    This action was brought by F. W. Young, Maurice Generelly and Lucien J. Doize, declaring themselves the liquidating commissioners of the plaintiff, a corporation of the State of Louisiana, in liquidation.

They averred that on December 31st, the defendant, then a director of the plaintiff company, subscribed to five hundred shares of the capital stock of said corporation, at ten dollars per share; that said subscription had not been paid, notwithstanding amicable demand; that he owes the total amount thereof, to-wit: five thousand dollars; that by the terms of said subscription, the amount thereof was payable in instalments of ten per cent. monthly until paid, and consequently he owed legal interest on each of said instalments from date; that same was exigible until paid.

They prayed for judgment against defendant for five thousand dollars, with legal interest on five hundred dollars from January 31st, 1896; like interest on like instalments from February 29th, March 31st, April 30th, May 31st, June 30th, July 31st, August 31st, September 30th and October 31st, 1896.

Defendant excepted for the reasons.

1. That the petition should disclose how the plaintiffs, styling themselves "liquidating commissioners," were appointed, or how they acquired such capacity; whether they were so elected by a vote of the stockholders or directors of the Jackson Fire and Marine Insurance Company; whether they were appointed such by the order or decree of any court, and, if so, what court and by what proceedings of the State; or how, or in what manner, they acquired the character in which they sue; if they were elected by the stockholders of the said company, whether the latter was previously dissolved, and, if so, by what proceedings, or steps, the said dissolution was accomplished; or, if appointed by the directors of said company, by what authority the said appointment was made.

2. That the petition should disclose whether or not the contract to subscribe the capital stock of said company, which is declared upon, was made orally or in writing, and, if orally, when, where and under what circumstances the same was made; or, if in writing, the date of· the same, and in the event the said subscription was in writing defendant desires to have *oyer* of the same.

3. That the petition herein disclosed no cause of action.

Wherefore, defendant prayed that the first and second exceptions set forth be maintained, and in accordance therewith that defendant be dispensed from answering until the information sought by said exceptions be furnished by the filing of a supplemental petition, and on the failure to file such petition · within five days after the maintaining of such exceptions that the suit be dismissed as in case of non-suit, and in the event that the exception thirdly, above set forth, namely, that of no cause of action, whether alone or in addition to the other exceptions filed, be maintained, that plaintiff's demand be rejected, and their suit dismissed with costs, and for general relief.

The court sustained defendant's exception of no cause of action and dismissed the suit, but on a new trial the judgment of dismissal was set aside and plaintiff permitted to amend.

An amended petition was accordingly filed, in which petitioners alleged that they were acting and representing the creditors and stockholders of the Jackson Fire and Marine Insurance Company, Limited, by virtue of the order of this court (Civil District Court, Division "C"), rendered November 4, 1896, in the matter entitled "Jackson Fire and Marine Insurance Company, Limited, in Liquidation," No. 51,323 on the docket, and the further order of the court in said proceeding of date August 6, 1897, accepting defendant's resignation, and August 31, 1897, appointing Lucien J. Doize liquidating commissioner, vice defendant herein, resigned, and by virtue of the letters issued in accordance with said orders by the court to petitioners.

That they were also acting by virtue of the preceding vote and election of the stockholders of said Jackson Fire and Marine Insurance Company, Limited, fully set forth in the first petition and exhibits, approving the action of the stockholders' meeting, placing said company in liquidation and affirming the election of petitioners, with defendant, Bernard J. Walle, as liquidating commissioners.

That all of said proceedings, both of the stockholders and of the court,

as above set forth, were with the full knowledge, approval and partici-
pation of the defendant, who was one of the original liquidating com-
missioners, and who was estopped from in any wise questioning or dis-
puting same.

That the Jackson Fire and Marine Insurance Company, Limited,
was insolvent, and was so insolvent at the time of the appointment of
liquidators; and it was necessary, in order to pay creditors, and also
equalize the losses among all the holders, many of whom had paid in full
and others partially their subscription, to collect all obligations owing
to it, including all unpaid stock subscriptions.

That the subscription stock, originally sued for, was not in writing,
but was made by defendant verbally, while a director of the company,
and that defendant, while such director, instructed the entry of said
stock, as by him subscribed, upon the books of said company, and caused
said stock, then subscribed by him, to be included among and published
as an asset of said company, giving it thereby an additional credit; that
credit having been given to said statements defendant was estopped to
deny their accuracy; that defendant being a director and manager of
said corporation, hence a fiduciary, was estopped to set up any defense
against said stock subscription, or to deny or question same in any
way.

They prayed for citation on defendant and for judgment as origi-
nally asked.

Defendant answered.

After pleading the general issue, he specially denied that he ever
made any subscription to, or for, the capital stock of the Jackson Fire
and Marine Insurance Company, Limited, or in any manner agreed
and bound himself to become a stockholder in the same, as it was
claimed by the petition; that he, at any time, instructed the entry upon
the books of the company of the said stock as subscribed for by him;
that he caused said stock to be included as an asset in any statement
published by the company; that he ever had any part in or did any act
consenting to or approving of the use of the subscription upon which
he was sued as a means of procuring additional credit for the said com-
pany. He denied any and all acts which would create against him an
estoppel to deny that he was liable upon the pretended subscription
sued on, or that he ever made or agreed to the same.

He denied that he had ever by act or acts or conduct of any character
whatever consented to the subscription sued on; that he ever made the

same or ever in any manner bound himself to take and pay for the shares of the capital stock of said company described in the original petition.

The District Court rendered judgment against defendant, and he appealed.

### OPINION.

The evidence shows that the Jackson Fire and Marine Insurance Company is an insolvent corporation and, that as such, it was placed in liquidation and liquidators appointed thereto.

The liquidators, who prosecute this suit, allege that they are acting in behalf of and representing the stockholders and creditors of the corporation.

That it was necessary in order to pay creditors and equalize losses among all the stockholders, some of whom had paid in full and others only partially their subscriptions, to collect all obligations owing to it, including all unpaid stock subscriptions.

It is alleged that the defendant is a stockholder of the corporation to an amount of five thousand dollars, which is wholly unpaid, and judgment is asked against him for that amount.

We think that plaintiffs have proved the averments of their petition; that, although defendant's *status* as a stockholder was not evidenced by his signature to a stock subscription made out in the usual form, he had none the less consented verbally to subscribe for five thousand dollars of stock while a director of the company, and while occupying that position he authorized the entry of his said subscription in the books of the corporation and consented to and authorized the including of the amount so subscribed by him in the statements of the amount of stock subscribed for by the corporation giving it thereby additional credit.

Defendant was a stockholder in the company independently of the five thousand dollars subscription, and he was also one of its directors and a member of its finance committee, and the books of the corporation with the stock entries therein made while he occupied these positions were properly introduced in evidence as was also parole evidence to show direct knowledge by him of the same and his direct consent.

We think these entries *quoad* him are sufficient "written evidence" of his consent to bind him, and particularly so when a statement of the condition of the corporation having been prepared for publication and

circulated in which figured, for the purpose of showing the amount subscribed for, the five thousand dollars subscription which defendant had authorized and consented to have entered in the books, he approved the same by writing the letters "O. K." upon it.

It appears that three other directors of the company, Young, Johnson and Frank, subscribed verbally for five hundred shares of stock in the same manner and at the time that defendant subscribed.

It appears that a person in New York had proposed to enter into a contract with the company to become its collector there and also to sell its unsubscribed for stock, and came to New Orleans to confer upon that subject, and the circumstances under which and the purpose for which the four directors made their subscriptions originally is stated by E. W. Hart, who was at that time the book-keeper of the corporation and made the entries referred to.

In answer to a question as to what the object of the subscription was, he said: "My recollection is a little uncertain about that, but I think it was due to the fact that the company was about to make a contract with a gentleman in New York City who proposed placing agencies around, making a contract with the company for controlling those agencies, and who made the company such representations that they believed, or it appeared on the face of that, to be a very good contract, and all his propositions were based on the fact that the company's statement would show a certain amount of stock. It lacked that necessary amount, and those subscriptions were proposed in order to make a statement that would induce him to take hold of the company as an incident to his agency.

"He was also to place stock; to sell stock.

"The conversation was about in this line; that if those gentlemen would take those five hundred shares of stock each, and then would make this contract, that those gentlemen in New York would have no trouble whatever in disposing of those five hundred shares. They simply took them in their name, as I understand it, in order to make a good statement for the company's being responsible, but they intended to sell that stock, and the first two thousand shares that were sold would be those two thousand shares subscribed for by these gentlemen."

He says that the proposed contract was made and the person who came to New Orleans (also by the name of Hart) entered into the duty of manager of the company; he had absolute control of the under-

writing in his contract, but he took personal charge of it in the North; quite a lot of insurance was taken in the North under the contract. The contract did not *result* as favorably as we had supposed it would, or his company supposed it would. It was not the success that it gave promise of being; when he first took hold of it, things were humming— apparently. There were lots of insurance written, and lots of stock placed, and the first payments on the stock that he placed were paid for. The stock was all sold on payments ·of ten per cent. cash and ten per cent. a month, but after the first few months the people to whom he sold the stock didn't pay any more and we found that people who had written insurance, the agents he placed, were very slow in remitting. Finances got hard up and that was the result (cause) of the company's liquidating; that was the cause of it—of the insolvency of the company."

We do not think that, under the state of facts declared by this record, defendant is in a position to say that he was not a stockholder, because it was not expressly declared in an instrument directly over his signature that he subscribed to a certain number of shares of stock, nor because it was never his intention to subscribe for or pay for the stock. In Belknap, Receiver, vs. Adams & Rice, 49 Ann. 1353, we said that liability for the stock, whether created by actual subscription or receiving certificates from the corporation, or by *any other mode of dealing with the corporation of equal significance,* can not be discharged except by payment.

Defendant claims that it was understood, *ab initio* by the corporation, that it was not his intention to subscribe for or pay for stock; that the corporation would have no right to hold him estopped; the liquidators have no greater rights; that it had been held, in Nicolopulo vs. His Creditors (39 Ann. 472), that a syndic had only the rights of the ceding debtor; that it is a general principle of law that parties acting in a representative capacity, or claiming rights from others, have only the rights of their principals or those from whom they derive their rights, and in this connection he cites: Succession of Nash, 48 Ann. 1573; State National Bank vs. Bryant & Mathers, 49 Ann. 467, and *Fenn vs. Insurance Company,* 48 Ann. 541.

He contends that there is no evidence before the court that any of the present creditors of the corporation were injured in any way by his act, and, if so, who they are and what is the amount of their claims.

The subscription by the defendant to the stock of the corporation

was not a contract between him and the corporation itself, which the liquidators are seeking to enforce. Defendant is, by subscription, the owner of five hundred shares of the stock of the plaintiff company; he is the original owner of the stock and substantially one of the creators of the corporation, and the amount of his subscription was as much a direct contribution from himself to the corporation as if he had been one of the original incorporators.

Defendant says there is a difference between an original subscription to stock for the purpose of organizing a corporation and a subscription after the company is organized, but we do not think that a subscription of the latter kind is any more a matter of "contract" between the "corporation" and the subscriber than an original subscription. In the former there is no second person in existence (other than the State) to receive and accept a proposition to subscribe. It is the joinder of subscribers and the contribution of capital which, in themselves, give rise to this second person, which, when formed, takes hold of the contributions and operates them for the benefit of stockholders. The amounts contributed constitute the basis on the faith of which creditors make their contracts with the corporation and which, from the very nature of things, should be called in and collected for their benefit, when necessary. Their right of recourse upon this fund is direct and original and not derivative, though made effectual ordinarily through corporate instrumentalities.

As said by this court in Belknap vs. Receiver, 49 Ann. 1353: "In the language of the authorities the liabilities of stockholders to the corporation, for their stock, is treated as a trust fund for creditors, and the courts will enforce the trust through the receiver or other appropriate methods (Cook, Stock and Stockholders, 91 U. S. 47, 48). * * * The shareholder's liability for unpaid stock, received for the corporation, is to future as well as subsequent creditors."

In the case at bar it is not alleged, or shown, what the actual situation of the plaintiff corporation is as to stockholders other than defendant who have not paid their stock, nor as to the amount of money needed to pay creditors, costs and expenses, etc.

In the case last cited we said: "The receiver's suit against shareholders for the amounts due on their stock is in the interest of creditors and the recovery is limited by the debts of the corporation to be satisfied."

The judgment rendered by the District Court against the defendant

herein, is an absolute judgment presently enforceable for its full amount against the defendant, without reference to the condition and situation of the corporation as to other stockholders and as to cred- itors.

We think the judgment appealed from is correct, and we affirm it so far as it adjudges and decrees defendant to have become a stockholder in the plaintiff corporation for an amount of five thousand dollars on the subscription declared upon in plaintiff's petition, and in so far as it decrees that defendant is legally liable upon the same. Payment of the judgment, recognizing said liability, should, however, be enforced only to the extent necessary to pay the corporation debts, the costs and expenses of the liquidation of the corporation, the same to be hereafter shown and proved in the District Court, and the judgment against him should be decreed to be satisfied upon payment of said amount.

It is therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed to the extent herein stated, but amended in the particulars just herein stated, and the cause is remanded to the District Court for further proceedings and judgment in accordance with this opinion and decree.

Defendant to pay costs in the District Court, and plaintiff those of appeal.

MONROE, J., recused.

Application for rehearing by defendant refused.

Application for rehearing by plaintiff granted.

## ON REHEARING.

BREAUX, J. The defendant was sued for the amount of his stock as a stockholder in the plaintiff company. The cause was heard here and a decision was rendered.

We will not restate the facts as they are set out in our original opinion. On the application for a rehearing, both the appellant and the appellee find reasons to urge against our decree.

The defendant and appellant restates the grounds heretofore pressed upon the court's attention, against the entire judgment, and seeks to be relieved entirely from all liability. We may as well state here that, upon re-examination, except in minor particulars, we have not found good ground for changing the views we have heretofore expressed.

Plaintiff and appellee asks for an amendment of our decree so that it will not be limited to a sum sufficient to pay the debts of the corpora-

tion, but so that it will include as well all amounts needful for equalizing the losses among the stockholders.

Counsel entered into the following agreement: "Each party should have the right to bring up such papers or original or copy as might be deemed necessary." Counsel, we are compelled to say, were a little tardy in supplying the papers not originally included in the transcript. The result was that issues of fact were not completely presented and that it was only after additional papers had been brought up and filed, under the agreement in question, that they became evident. It now appears that the company has ceased its operation; that it is in an insolvent condition.

The liquidation and settlement of the affairs of the corporation is about all that remains to be done.

As the debts must be paid, and an equalization of the losses among the stockholders arrived at, we think, under the circumstances, that the stockholders who have not paid their subscriptions to the stock should pay. If there should remain a balance after the payment of the debts and the equalizing of the losses among the stockholders, it can be returned to the one entitled to it. From all appearances, there will not be any thus left to return, and for that reason we conclude, without further delay, payement should be made of stock the subscriptions to which has not been paid.

We pass to the interest allowed by the judgment of the District Court and afterwards affirmed in our original decree. Further consideration of the subject has induced us to make a slight change in this respect. Heretofore, we allowed interest from the date that plaintiff claimed the interest was due. It does not appear that any call was regularly made for payment of subscriptions. Moreover, the charter is not before us to enable us to determine from what date the subscription on shares became due.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed except as relates to the interest, and in that respect the decree is amended so that the stock subscription due shall bear interest from judicial demand and not from the date as set forth in the judgment appealed from. Our former judgment remains unchanged, or is reinstated, except in so far as it does not conform with this decree as just expressed. (The case is, therefore, finally disposed of and not remanded).

Monroe, J., takes no part, having decided the case in the court a qua.