## 8105.   THE COSMOPOLITAN LIFE INSURANCE CO.
### v. SHEATS.

1. Ordinarily a subscriber to the capital stock of a corporation may, as against the corporation, avoid the contract of subscription where it was induced by fraudulent representations of its duly authorized agents. But where a suit on such a subscription is instituted by creditors of the corporation, whose claims arose after the subscription, or where it is maintained in behalf of such creditors either by the corporation itself by one acting in the capacity of receiver therefor, the subscriber can not, after the insolvency of the corporation, defend on the ground of fraud in the procurement of the subscription, but is liable, for the benefit of such creditors, for so much of his unpaid stock subscription as, in connection with the amounts due by the other corporators, might be necessary to liquidate such corporate indebtedness, against which his plea of fraud could not avail. *Howard* v. *Glenn*, 85 *Ga.* 238 (6) (11 S. E. 610, 21 Am. St. R. 156); *Gress* v. *Knight*, 135 *Ga.* 60 (68 S. E. 834, 31 L. R. A. (N. S.) 900); *Turner* v. *Grangers' Life &c. Insurance Co.*, 65 *Ga.* 649 (38 Am. R. 801); *Wilkes* v. *Knight*, 142 *Ga.* 458 (83 S. E. 89); *Empire Life Ins. Co.* v. *Brown*, 145 *Ga.* 818 (89 S. E. 1085); *Southern Tobacco Co.* v. *Armstrong*, 11 *Ga. App.* 501 (75 S. E. 828). Where, under proper authority, such a suit is maintained by one acting in the capacity of a receiver, it is not an essential prerequisite to a recovery that the amount due by such a subscriber should be ascertained and determined, since the court of equity, having all parties at interest before it, would ascertain and adjust the rights and equities of such subscribers in the distribution through the receiver of any surplus which might arise. *Graves* v. *Denny*, 15 *Ga. App.* 718 (84 S. E. 187).

2. Where a receiver of an insolvent corporation, acting under proper authority, sells the assets of the corporation, included in which are unpaid stock subscriptions, the purchaser will take them with all the rights had by the receiver, in the absence of any provision to the contrary in the terms of the sale. *Bailey* v. *Anderson*, 142 *Ga.* 11 (82 S. E. 290); *Harrington* v. *Connor*, 51 Neb. 214 (70 N. W. 911). The fact that the corporate indebtedness may have been actually discharged by the receiver from funds derived from such a sale would not affect the rights of the transferee.

3. Where the order of court authorizing the sale by the receiver of the assets of an insolvent corporation provides that "the said purchasers shall hold the same free from all claims and equities attaching thereto, and all liens and equities thereof are transferred to the purchaser of said stock, except that in the transfer of notes and other obligations given for subscriptions of stock the purchaser shall take the same subject to the rights of the makers thereof to make such defenses as may be legally established; provided that the maker of such note or obligation had given notice of the same to the insurance commissioner prior to the first day of March, 1913," this provision must be taken to mean that the purchaser will take the notes subject to the rights of the makers

thereof to make such defenses as might be legally established against the receiver, in whose hands the notes were held at the time the order was passed.

4. In a suit on such a note, brought by a transferee under such a sale, where it is shown that the receiver was unable to pay in full such corporate debts unless the note sued on and other notes similarly situated were collected or sold, the transferee is entitled to recover the amount of the obligation sued on; and if, by reason of the sale of the corporate assets, a surplus has arisen in the hands of the receiver, the maker of the note would be entitled to the pro rata portion thereof to which he is equitably entitled. It was therefore error, under the agreed state-- ment of facts in this case, for the court to render judgment in favor of the defendant.

DECIDED JULY 23, 1917. ADHERED TO ON REHEARING, SEPTEMBER 18, 1917.

Complaint; from Bartow superior court—Judge Fite. July 1, 1916.

This was a suit on a promissory note, brought by The Cosmopolitan Life Insurance Company as holder against S. I. Sheats. The defendant admitted the execution of the note, pleaded a special defense by way of avoidance, and assumed the burden of proof. Thereafter an agreed statement of, facts was entered into, and the case submitted to the trial judge for decision; a judgment was entered for the defendant, and the plaintiff brought this writ of error. The agreed facts are in substance as follows: The note in question was given in subscription for the stock of a former and different insurance company of the same name as the present plaintiff, except that the word "The" was omitted as the first word of the corporate name. The subscription to the stock was made and the note given in January, 1912; the note was made due and payable on December 20, 1912. It was procured by certain agents of the old company by means of certain materially false and fraudulent misrepresentations, fully set out in the defendant's answer. After the procurement of the note the old company continued writing policies of insurance, accumulating a large amount of indebtedness to its policyholders and others, during which time no action was taken by the defendant looking to the cancelling of his stock subscription, but the subscription remained apparently of full force and effect, and was carried as a part of the assets of the old company on which it obtained credit. This condition of affairs continued until September 24, 1912, when a suit was instituted by Sudderth and others in Fulton superior court, praying the appointment of a receiver, under which the court took jurisdiction

and assumed control of the assets of the old company. On November 9, 1912, the insurance commissioner filed a petition in Fulton superior court, praying that the assets of the company be turned over to him pursuant to the act of August 17, 1912 (Ga. L. 1912, p. 119). On December 18, 1912, an order was passed in the Sudderth suit, providing that the assets held by the court under that proceeding should be turned over to the insurance commissioner under his suit. All of the foregoing proceedings were had before the defendant had made any effort to rescind his stock subscription, but while it remained apparently in full force and effect, and no such effort was made by the defendant until after the assets of the old company had passed into the hands of the insurance commissioner under his suit for liquidation, as previously stated.

On December 27 and 28, 1912, the insurance commissioner and the defendant entered into an agreement by correspondence, whereby the commissioner obligated himself not to dispose of the collateral security to the said note, pending the determination of the defendant's liability thereon, without first giving him at least thirty days prior notice thereof. In the course of this correspondence the defendant denied the legality of the obligation now sued on and set forth the grounds of his defense. On February 3, 1913, in the suit of the insurance commissioner, an order decreeing the liquidation of the old company was entered, reciting, among other things, that its insolvency was admitted. In the liquidation by the insurance commissioner of the assets of the old company, they became, by regular and authorized sale, the property of the present plaintiff, and among the assets so bought was the note on which the present suit is based. The order for this sale refers to the sale of the notes given for the stock of the old company, and provides: "The said purchasers shall hold the same free from all claims and equities attaching thereto, and all liens and equities thereof are transferred to the purchaser of said stock, except that in the transfer of notes and other obligations given for subscriptions of stock the purchaser shall take the same subject to the rights of the makers thereof to make such defenses as may be legally established; provided that the maker of such note or obligation had given notice of the same to the insurance commissioner prior to the first day of March, 1913." In pursuance of this order the defendant, through

its attorneys, set out in writing the full grounds of his defense and delivered the same to Hon. W. A. Wright, insurance commissioner, on February 25, 1913; and subsequently, in response to a circular letter from the insurance commissioner, dated February 28, 1913, in which his liability on the said note was apparently assumed, he again addressed the insurance commissioner, denying indebtedness on the note, and again stated the grounds of his contention; after which, on March 13, 1913, the defendant notified the officials of the present plaintiff corporation of his rescission of the subscription contract, and set out to them the grounds of his defense. It is not contended by the plaintiff that he occupies the position of a bona fide purchaser without notice.

It was further agreed, in the statement of facts, that the old company had accumulated a large amount of indebtedness before it went into the hands of the insurance commissioner, and that the insurance commissioner could not, in the liquidation of its affairs, have paid in full the debts of the company, unless the note in question, and other notes similarly situated, were either collected or disposed of. It is stated in the said agreement that the misrepresentations made to the present defendant were similar in all respects to the misrepresentations made to all purchasers of stock in the old company, except those who were themselves the promoters of the general scheme to defraud the public; the other purchasers of stock to whom the same misrepresentations were made being the other persons similarly situated, whose notes it was necessary to collect or sell in order to pay in full the debts of the old company in its liquidation. The statement of facts did not in any wise disclose the status or amounts of such other stock subscriptions. It does not show what the assets of the old company consisted of, which it is stated brought the sum of $354,000, and which it might be reasonably inferred from the statement were sold in bulk. The agreement does show that "After said purchase the plaintiff issued a prospectus, in which it recited the purchase by competitive bid and the amount paid for said assets, and which added the following statement: 'In the judgment of the committee it has a profit of more than $100,000.00 in this bid.'" It was agreed that in the event the plaintiff should recover, the note should be credited with the sum of $1,157.25, as of March 11, 1913, and reference is made in the brief of defendant's counsel to the fact that after the pay-

ment of the debts of the company, its stockholders became entitled to a dividend of twenty-three per cent.; but while counsel for the plaintiff state that such is the fact, they show that no such statement is embodied in the agreement submitted, other than the reference made to the credit referred to as proper in the event of a recovery.

*Little, Powell, Smith & Goldstein,* for plaintiff.

*Neel & Neel, Smith, Hammond & Smith,* for defendant.

JENKINS, J. (After stating the foregoing facts.) It is not thought necessary to elaborate any of the rulings announced in the headnotes except the last. In this suit, based upon a note given for a subscriber's stock subscription, the original burden of proof was upon the plaintiff to show the execution and delivery of the note, and its assignment into the plaintiff's hands. This was admitted. Thereupon it devolved upon the defendant, in order to establish the defense on which he relied, to show that the subscription for which the note was given was induced by fraudulent misrepresentation of the agents of the corporation. This also was admitted; the effect of which would ordinarily be to avoid the contract of subscription. In order, however, to obviate such a result, the plaintiff proceeds further to plead, and to show by the agreed statement of facts, that the corporation had, subsequently to the execution and delivery of the note, incurred a large amount of indebtedness, that it was insolvent, and that after the assets of the company had come into the hands of the insurance commissioner, acting as receiver, they were, for the purpose of liquidation, and under order of court, sold to the plaintiff; and finally it was agreed "that the insurance commissioner could not, in the liquidation of its affairs, have paid in full the debts of the company unless the note in question, and other notes similarly situated, were either collected or disposed of; that the misrepresentations made to the present defendant were similar in all respects to the misrepresentations made to all purchasers of stock in the old company, except those who were themselves the promoters of the general scheme to defraud the public." The question, therefore, is whether, after the defendant had set up and proved a good prima facie defense, the plaintiff rebutted it and carried the burden which then devolved upon it of proving that the subscription sued on must necessarily have been required by the receiver, by means of

collection or sale, in order to discharge the corporate indebtedness, by merely showing ?that the insurance commissioner could not in the liquidation of its affairs have paid in full the debts of the company, unless the note in question and other notes similarly situated were either collected or disposed of."

The proof thus submitted by the agreement would seem very clearly to indicate that liability to some extent existed on the part of the subscriber, against which his plea of fraud would not avail; but whether the full burden resting on the plaintiff was thus successfully carried, or whether it was further incumbent on it to show to what extent the collection or sale of the note sued on had been necessary, when taken in connection with the amounts due by the other corporators, in order to pay off the corporate indebtedness, and whether or not the defendant's liability would be limited to the proof thus made, are questions which to the writer are not without difficulty. Had the corporate assets not been disposed of by sale, but liquidated while in the hands of the receiver, it would seem that such official would certainly have been enabled, under proper authority, to marshal all the assets of the corporation, and in so doing to collect in full the stock subscriptions as constituting a part thereof, since the receiver, when so acting under authority of the court of equity, would have all parties at interest before the court, and would be required to adjust and protect the equities of all, and no injustice would result from such a subscriber being required to pay into court, for equitable distribution, whatever amount his subscription called for. *Graves* v. *Denny,* supra; *Wilkinson* v. *Bertock,* 111 *Ga.* 187 (2), 190 (36 S. E. 623). The present suit, however, is not maintained by the receiver, but was brought by the purchaser of the corporate assets, which sought to recover only for itself and solely for its own benefit. Could it have been shown that the subscription notes had been bought in for their full face value, there would be no difficulty in seeing that the ascertainment and payment of the proper dividend going to such subscribers from the receiver would fully adjust their rights and equities. But it is not to be expected that a purchaser at such a sale would actually pay face value for such assets; and in this case the record in fact discloses that the assets, including the note sued on, were bought in at such a discount as caused the purchaser through its committee to estimate at one•time that it would realize

an actual profit of $100,000 on the transaction. Suppose that in a given case it could be shown that under such a sale the subscription notes actually brought only a very small per cent. of their face value, should a maker be liable to the purchaser in the full amount of his obligation, for the reason that he might then be entitled to share equitably in any surplus which might arise in the hands of the receiver? It does not seem that any rule should obtain which, in a legal sense at least, could permit the liability of such a subscriber to be increased by reason of such a sale. Herein to our minds lies the difficulty of the question involved,—that is, whether under such a sale the subscriber is liable to the purchaser in the amount of his note, with the right to share equitably in the actual surplus arising in the hands of the receiver, or whether he is liable only in the amount which the holder may be able to show was, when taken in connection with the amounts due by other corporators, necessary in order to pay off such indebtedness.

We have reached the conclusion that the first of these propositions is the correct one. It is not contended by either party to the litigation that the receiver did not have the right, when so empowered by the court of equity, to dispose of the corporate assets by sale. This being true, can it really be said that in a legal sense the defendant's liability was increased thereby, even though it should appear that the purchaser under the sale expects to derive a profit therein? When the court, having before it the corporation, the shareholders, and the creditors (*Howard* v. *Glenn,* supra), passed the order for the liquidation of the corporate assets by sale, and subsequently, having the same parties before it, with a like duty to consider and protect the rights and interests of all, adjudged the sale to have been fair and equitable to all concerned, by solemnly confirming it, our opinion is that the procedure was equivalent, in a legal sense, to a collection in full of these claims by the receiver, in so far as he would have been enabled to accomplish the collection. Had the latter course been pursued the defendant would have been responsible for the amount of his note, with the right to share equitably in any surplus arising; and since, in a legal sense, the same liquidation of assets has been accomplished by means of a sale, the subscriber must look only to the receiver for the adjustment of his equities. It is therefore our

opinion that under the agreed statement of facts, the judgment of the court below in favor of the defendant must be reversed.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*