EARLE F. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 97388.    Promulgated March 14, 1941.

*Ward Peck, Esq.*, for the petitioner.
*Paul A. Sebastian, Esq.*, for the respondent.

964

OPINION.

VAN FOSSAN: The sole question before us is whether or not petitioner received a distribution in liquidation within the purview of section 115 (c) of the Revenue Act of 1934.[1] If we should hold that petitioner received a liquidating dividend, petitioner's loss must be limited by the provisions of section 117 (d) of the Revenue Act of 1934.[2] The parties agree that petitioner sustained a loss in the taxable year on his investment in the stock of the Great Miami Realty Corporation.

Petitioner contends that he sustained an ordinary loss due to the fact that his stock in the corporation became worthless in the taxable year. He maintains that he lost the total amount of his investment and received nothing in exchange. Respondent argues that petitioner

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges.

constructively received a distribution in liquidation within the meaning of section 115 (c) by reason of the liquidator's release of the unpaid balance of petitioner's subscription or by application of the unpaid balance as an asset of the corporation against the debt which petitioner owed the corporation upon his subscription.

Respondent cites *Philips* v. *Slocumb*, 35 Del. 462; 167 Atl. 698; *Cumberland Lumber Co.* v. *Clinton Hill Lumber Mfg. Co.*, 57 N. J. Eq. 627; 42 Atl. 585; and *Fletcher* v. *Bank of Lonoke*, 71 Ark. 1; 69 S. W. 580, as authorities that subscribers are legally liable to the corporation for unpaid subscriptions to capital stock. In each of these cases, however, it is indicated that where the corporation ceases to be a going concern or is in receivership liability on unpaid stock subscriptions is limited to amounts necessary for payment of creditors, equalization of shareholders, and payment of liquidation expenses. Such is the prevailing rule.

Respondent contends that, since petitioner was liable to the corporation upon his subscription contract and was released from that liability by the liquidator, petitioner thereby received a dividend in liquidation. In support of this contention respondent relies upon *Bracken* v. *Stuart*, 32 Ohio App. 399; 168 N. E. 149. The *Bracken* case is no authority here. In that case the receivers of a corporation brought an action for unpaid subscription against a subscriber to the capital stock of the corporation. The defendant demurred to the complaint on the ground that it did not allege that the corporation was insolvent or that the collection of the subscription was necessary for payment of creditors of the corporation. The court held that the complaint stated a cause of action and hence was not demurrable. From this decision respondent argues that the liquidator could have enforced petitioner's liability for payment of his subscription even though the funds would not be necessary for payment of debts or expenses of liquidation.

As indicated above, the question in the *Bracken* case arose on demurrer. It would be profitless to conjecture what the court would have held on the merits. In any event, that case did not involve the present question.

The problem here is somewhat analogous to that considered by the Circuit Court of Appeals for the Seventh Circuit in *Hirsch* v. *Commissioner*, 115 Fed. (2d) 656. There the taxpayer purchased real property for $29,000, paying $10,000 cash and assuming a mortgage of $19,000. In the taxable year the balance due on the mortgage was $15,000, while the value of the mortgaged property had depreciated to $8,000. The taxpayer offered to convey the property to the mortgagee in full payment of his debt. The mortgagee refused the offer and accepted $8,000 in full payment of the $15,000 due under the

mortgage. The Commissioner taxed the reduction of $7,000 in the mortgage indebtedness as income to the taxpayer. The court held that no income was realized because "petitioner received nothing of exchangeable value." Although we are not considering a question of income here, the analogy is close. Petitioner received nothing in exchange for the additional payments on his stock subscription. The payments were made in order that debts could be cleared, fully paid shareholders placed on an equal basis and liquidation expenses met. The total amount paid by petitioner was the cost of his investment. The release from the remainder of his subscription liability by the liquidator was "nothing of exchangeable value." The fact that petitioner received nothing in liquidation distinguishes this case from cases such as *White* v. *United States*, 305 U. S. 281; *Helvering* v. *Weaver Co.*, 305 U. S. 293, and similar cases.

We are of the opinion that no amount was distributed to petitioner in liquidation of the Great Miami Realty Corporation within the meaning of section 115 (c) of the Revenue Act of 1934. Accordingly, we hold that his loss due to worthlessness of stock of the corporation is deductible as an ordinary loss in the year 1935.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

Hill, dissenting: I do not agree with the conclusion reached in the opinion of the majority. I think the facts show that the petitioner got a liquidating distribution of somewhat greater value proportionately than did the paid-up stockholders and that the deduction of his stock investment loss was limited by the provisions of section 117 (d) of the Revenue Act of 1934.

The facts show that of the total subscriptions for stock of the corporation there was unpaid $35,680 at the time of dissolution. This amount was due from only four of the seven stockholders. At that time there were secured and unsecured corporate debts outstanding. After all of the corporate assets other than the stock subscriptions had been applied toward the payment of the debts the amount of the debts remaining, plus expenses of liquidation, was $11,110.26, payment of which had to be made out of collections of unpaid subscriptions. The excess of such subscriptions over the remaining debts and liquidating expenses was $24,569.74. This amount represented corporate assets available for liquidating distributions to all of the stockholders. Every stockholder had a beneficial interest in these corporate assets proportionate to his amount of stock subscription, whether fully paid or not, and was entitled to a liquidating distribution to the extent of such interest. Every share of stock had a liquidating value in the amount of its allocable share of the value of the corporate assets avail-

able for distribution. Every share of stock had the same liquidating value as every other share. There was no worthless stock. Petitioner's stock had the same liquidating value per share as did the stock of the paid-up stockholders and he was entitled to the same proportionate liquidating distribution. On the basis of total stock subscriptions such distributable assets, if converted into cash at face value, would provide a liquidating distribution of approximately 12.28 percent.

Three of the stockholders had paid their subscriptions in full for a total of 150 shares. The total amount so paid was $15,000. The liquidator had the problem, first, of collecting subscriptions sufficient to pay the corporate debts and the liquidating expenses. After that was accomplished he must either collect the remaining unpaid subscriptions in full and distribute the proceeds among all of the stockholders proportionate to their stockholdings, or collect a sufficient amount to provide cash distributions to the paid-up stockholders of their proportionate share of distributable assets and release the delinquent subscribers from further payments which, if made, would be substantially of the same amounts that would be returned to them as cash liquidating distributions. The latter method was employed. The liquidator determined that the distributable assets were of a value to provide a liquidating distribution of 9.24 percent to all of the stockholders. It was necessary to make cash distributions only to the three paid-up stockholders. The liquidator therefore collected $11,110.26 to pay debts and liquidating expenses, plus $1,386 for cash distributions of 9.24 percent on stock fully paid at $15,000, and released the subscribers from payment of their remaining subscription obligations in the total amount of $23,183.74.

The amount paid by petitioner under this method of liquidation distribution was $5,482.32 and the amount of his released obligation was $7,467.68. If petitioner had paid his subscription obligation in full he would have received a cash liquidating distribution of not less than $7,174.86, or 9.24 percent of $77,650, the amount of his subscription of $81,250 less the refund of $3,600 given him on July 5, 1929. In fact his liquidating distribution would have been slightly in excess of $7,174.86 but somewhat less than $7,467.68, the amount of his released obligation.

It is held in the opinion of the majority that petitioner received nothing in liquidation and that the release from the remainder of his subscription liability was "nothing of exchangeable value." In my opinion that statement ignores the established facts in this proceeding and the legal principle applicable thereto. That petitioner was entitled to receive a proportionate share of the distributable assets of the corporation can not be denied. Nor can it be denied that he received a thing which had a value to him of $7,467.68 and that by such receipt the value of the distributable corporate assets was depleted in that

amount. The release from his obligation did not come to petitioner as a matter of grace. The liquidator had no power to make him a present of a corporate asset and did not do so. The release to petitioner did not operate as a rescission *pro tanto* of his subscription obligation, but was merely an acknowledgment of its fulfillment by offsetting against it his distributive share of the corporate assets. The liquidator was legally bound to pay petitioner a liquidating distribution of at least 9.24 percent of his stock subscription and petitioner owed the liquidator a subscription obligation somewhat in excess of such distributive share. The one obligation was offset by the other. Without any money changing hands, petitioner got his liquidating distribution and the liquidator collected the subscription obligation. How can it be said, then, that petitioner received nothing in liquidation or that what he received had no exchangeable value?

Assuming, however, as is held in the opinion of the majority, that the release of petitioner's corporate stock subscription was not tantamount to a distribution of a corporate asset to him and that such release eliminated such subscription obligation as a distributable corporate asset without any offsetting credit therefor to the liquidator or any offsetting benefit to the other stockholders, there still remained distributable corporate assets of $1,386 in cash. As a stockholder petitioner would be entitled to share proportionately with other stockholders in the distribution thereof and such right would not be extinguished until he received such share or voluntarily relinquished his right thereto. Petitioner voluntarily relinquished his right to any distributive share of the cash in consideration of the release of his subscription obligation as hereinabove indicated.

It is, therefore, my opinion that petitioner received a distribution in liquidation within the meaning of section 115 (c) of the Revenue Act of 1934 and that the deduction of his loss is limited by the provisions of section 117 (d) of that act. *White* v. *United States*, 305 U. S. 281; *Helvering* v. *Weaver Co.*, 305 U. S. 293.